# UNITED STATES COURT OF APPEAL

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| In the Matter of the Search of: | Case No.  14-56550 |
| Ares Armor, 206/208 N. Freeman St., Oceanside; Ares Armor, 416 National City Blvd.; Ares Armor Warehouse, 180 Roymar St. D; and 2420 Industry, Oceanside, CA. | U.S.D.C. Case No. 14-CV-1424 JLS (BGS) |
| In the Matter of the Search of: | |
| LYCURGAN, INC. d/b/a ARES ARMOR,<br>                    Petitioner,<br>        vs.<br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br>                    Respondent. | |

## APPELLANT'S OPENING BRIEF

Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
**THE MCMILLAN LAW FIRM, APC**
4670 Nebo Dr., Suite 200
La Mesa, CA 91941-5230
Tel. 619-464-1500 x 14
Fax. 206-600-5095

Attorneys for Appellant/Petitioner,
Lycurgan, Inc.

# <u>CORPORATE DISCLOSURE STATEMENT</u>

(Fed. R. App. P. 26.1)

Appellant Lycurgan, Inc. has no parent corporation to Lycurgan, Inc. or any publicly held corporation that owns 10% or more of Lycurgan, Inc.'s stock.

# TABLE OF CONTENTS

II.  JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.  Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.  The Action Below. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.  The District Court Erred in Denying Lycurgan's Motion to Unseal
        Search Warrant Documents as Moot. . . . . . . . . . . . . . . . . . . . . . . . 12
    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        1. An Actual Controversy continues to exist because the
        redacted Search Warrant Affidavit is insufficient. . . . . . . . . . . . . . 14
        2.  The redacted names of the affiant agent and those
        other agents that "ginned up" the allegations in the
        warrant are Appellant Lycurgan's prospective Bivens
        defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        3. The issues below are capable of repetition, yet evade
        review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            a.  There Is A Reasonable Expectation That Lycurgan Will Be
                Subject to Another Search And Seizure Based Upon A
                Sealed Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
            b.  Properly, sealing of a Search Warrant Affidavit is  to be
                limited in duration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    B.  The District Court erred in denying Lycurgan's motion for new
    trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
        Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
        Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    C.  The District Court erred in denying Lycurgan's Motion for Attorneys
    Fees.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Merits.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

    1.  The District Court erred in finding that Lycurgan was not the prevailing party because the Government ultimately provided Lycurgan a redacted search warrant following tentative ruling from the District Court which comprised a *judicial imprimitur*.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

       a. The District Court Erred In Finding That The Government's Refusal To Unseal The Search Warrant Was Substantially Justified . . . . . . . . . . . . . . . . . . . . . . . . . . 44

       b.  The District Court Erred in Relying On First Amendment Cases Cited By The Government.. . . . . . . . . . . . . . . . 48

VI.    CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

iii

# TABLE OF AUTHORITIES

United States Constitution

U.S. Const. Amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim


Federal Decisional Authority

*Adarand Constructors v. Slater*, 528 U.S. 216 (2000). . . . . . . . . . . . . . . . . . 28, 31

*Alaska Ctr. for the Env't v. U.S. Forest Serv.,* 189 F.3d 851 (9th Cir. 1999) . . . . 48

*Arizonans for Official English v. Arizona,* 520 U.S. 43 (1997) .. . . . . . . . . . . . . 35

*Behler v. Hanlon,* 199 F.R.D. 533 (D. Md. 2001) . . . . . . . . . . . . . . . . . . . . . . 38

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991). . . . . . . . . . . . . . . . . . 36

*Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . 38, 39

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598  (2001) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 50

*Church of Scientology v. United States,* 506 U.S. 9  (1992).. . . . . . . . . . . 19, 20, 34

*City News & Novelty v. City of Waukesha,* 531 U.S. 278 (2001) . . . . . . . . . . . . 31

*Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199 (1968) . . . . . . . . . . . 28

*Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Davis v. FEC,* 554 U.S. 724 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 27

*Davis v. United States DOJ*, 391 U.S. App. D.C. 365, 367, 610 F.3d 750, 752 (2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Dean v. Riser,* 240 F.3d 505 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Entick v. Carrington*, 95 Eng. Rep. 807, 817-18 (C.P. 1765).. . . . . . . . . . . . . . . 16

*First Nat'l Bank v. Bellotti*, 435 U.S. 765 (1978). . . . . . . . . . . . . . . . . . . . . . . . . 34

*Florida v. Jardines*, U.S. , 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Foster v. Carson*, 347 F.3d 742 (9th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . 12

*Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 28

*Gotches v. Heckler,* 773 F.3d 108 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 39

*Greenpeace Action v. Franklin,* 14 F.3d 1324 (9th Cir. 1993) . . . . . . . . . . . . . . 34

*Hale v. Henkel*, 201 U.S. 43 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hensley v. Eckerhart,* 461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*In re 14416 Coral Gables Way*, 946 F. Supp. 2d 414 (D. Md. 2011). . . . . . . 34, 45

*In re 14416 Coral Gables Way*, *Id.*, 946 F. Supp. 2d at 419-20.. . . . . . . . . . . . . 36

*In re Application of United States of America for Order Authorizing the Installation of a Pen Register or Touch-Tone Decoder and a Terminating Trap, Bell Telephone Company of Pennsylvania*, 610 F.2d 1148 (3d Cir. 1979). . . 32, 33

*In re Matter of the Search of a Residence,* 121 F.R.D. 78 (E.D. Wisc. 1988) . . 35,

*In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d 577 (D. Md. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Search Warrants Issued August 29, 1994,* 889 F. Supp. 296 (S.D. Ohio 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 45

*In re Search Warrants Issued on April 26, 2004* (D. Md. 2005) 353 F. Supp. 2d 584. . 19, 46

*In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 591 (D. Md. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 49

*In re Searches & Seizures*, 2008 U.S. Dist. LEXIS 107087 (E.D. Cal. December 19, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*In re Wag-Aero, Inc*., 796 F. Supp. 394 (E.D. Wis. 1992) .. . . . . . . . . . . . . . 19, 46

*Indianapolis Star v. United States (In re Fair Fin.),* 692 F.3d 424  (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Jianping Li v. Keisler*, 505 F.3d 913, 918 (9th Cir. 2007). . . . . . . . . . . . . . . . . . 43

*Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 370, 380 U.S. App. D.C. 339 (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1174 (N.D. Cal. 2009) . . . . . 37

*Kode v. Carlson,* 596 F.3d 608 (9th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Love v. Reilly,* 924 F.2d 1492  (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Mapp v. Ohio*, 367 U.S. 643  (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Maritime Mgmt, Inc. v. U.S.,* 242 F.3d 1326  (2001). . . . . . . . . . . . . . . . . . . . . . 38

*Montes v. Thornburgh,* 919 F.2d 531 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . 41, 42

*National Wildlife Fed'n v. Federal Energy Regulatory Comm'n,* 870 F.2d 542 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Neal & Co. v. United States,* 121 F.3d 683 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . 38, 41

*Ortiz v. Ollison,* 2009 U.S. Dist. LEXIS 117001 (C.D. Cal. 2009) . . . . . . . . . . . 20

*Payton v. New York*, 445 U.S. 573, 583, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pierce v. Underwood,* 487 U.S. 552 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Public Service Co. v. Federal Energy Regulatory Com.*, 832 F.2d 1201 (10th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Rhodes v. Stewart,* 488 U.S. 1 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Scarborough v. Principi,* 541 U.S. 401 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Sims v. Apfel*, 238 F.3d 597 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Southern California Painters & Allied Trades, Dist. Council Nov. 36 v. Rodin & Co.,* 558 F.3d 1028 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Southern Oregon Barter Fair v. Jackson County, Oregon* (9th Cir. 2004) 372 F.3d 1128. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498 (2011) . . . . . . . . . . . . . 27, 34

*Stanford v. Texas*, 379 U.S. 476, 482-83, 85 S. Ct. 506, 13 L. Ed. 2d 431 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Times Mirror Co. v. United States,* 873 F.2d 1210 (9th Cir. 2011) . . . . . . . . . . . 48

*United States v. Able Time, Inc.*, 545 F.3d 824 (9th Cir. 2008) . . . . . . . . . . . . . . 12

*United States v. Bus. of the Custer Battlefield Museum,* 658 F.3d 1188 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 51, 52

*United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009).. . . . . . . . . . 16

*United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014). . . . . . . . . . . . . . . . . 16

*United States v. Hallmark Constr. Co.,* 200 F.3d 1076 (7th Cir. 2000).. . . . . . . . 39

*United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). . . . . . . . . . . . . . . . . 16, 17

*United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) . . . . . . . . . . 38

*United States v. Jones,* U.S. , 132 S. Ct. 945, 951 n. 5, 181 L. Ed. 2d 911 (2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*United States v. Montes-Ruiz*, 745 F.3d 1286, 1287 (9th Cir. 2014). . . . . . . . . . 12

*United States v. Real Property Known as 22249 Dolorosa St., Woodland Hills, Calif.* (9th Cir. 1999.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 44

*Up North Plastics, Inc*., 940 F. Supp. 229 (D. Minn. 1996) . . . . . . . . . . . . . . . . 46

*Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567 (4th Cir. 2004). . . . . . . . 45

*Weeks v. United States*, 232 U.S. 383 (1914). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Federal Statutes</u>

18 U.S.C. 921(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

18 U.S.C. 921(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 921. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 921(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. § 92l(a)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. §921 (a)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

18 U.S.C. §921(a)(4)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2412(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

28 U.S.C. § 2412(d)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 2412. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## Federal Regulations

27 C.F.R. 478.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

## Federal Rules of Appellate Procedure

Fed. R. App.  P., Rule 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 59(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# I.    INTRODUCTION

The circumstances present herein are a classic example of those "capable of repetition, yet evading review." It is binding Supreme Court precedent that an action is moot only where it is ***absolutely clear*** that the allegedly wrongful behavior cannot reasonably be expected to start up again. Here, the Court is confronted with circumstances where an agency of the United States — the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") — made an unlawful search and seizure under the Fourth Amendment of the United States Constitution, which was legitimized by a sealed search warrant affidavit supported by the unilateral determination of the ATF that the parts sold by Appellant Lycurgan Inc. ("Lycurgan") constituted "firearms." Absent a ruling on Lycurgan's motion to unseal search warrant documents, the ATF is free to continue conducting raids on Lycurgan, and those similarly situated, without providing access to the search warrants that purport to confirm the constitutionality of those raids. Thus, it is undeniably *unclear* that the ATF's wrongful conduct will not continue indefinitely. Accordingly, the district court erred in denying Lycurgan's motion to unseal search warrant documents as moot, and Lycurgan's subsequent motion for new trial, such that the district court's orders thereto must be reversed.

The Equal Access to Justice Act compels an award of attorney's fees to the

prevailing party in a civil action against an agency of the United States where the agency's action is not substantially justified. Under binding Ninth Circuit precedent, the district court also erred in denying Lycurgan's motion for attorney's fees on the ground that Lycurgan was not the prevailing party because the district court's order compelling the ATF to provide supplemental briefing to justify its refusal to unseal a search warrant affidavit caused the ATF to unseal the affidavit — the sole outcome sought by Lycurgan's action to unseal the search warrant affidavit. To justify its failure to unseal the warrant, the ATF was required to advance a compelling government interest in maintaining the affidavit under seal — a burden the ATF could not overcome. Accordingly, the district court's order denying Lycurgan's motion for attorney's fees must be reversed as well.

## II.  JURISDICTION

The district court properly exercised jurisdiction under 28 U.S.C. § 1331 as a civil action arising under the Constitution and laws of the United States.

On August 21, 2014, the district court entered its judgment denying as moot Lycurgan's motion to unseal search warrant documents. [Tab 4, Appellant's Excerpts of Record ("AER") 019-020.] On September 19, 2014, Lycurgan filed its notice of appeal. [Tab 24, AER 174-75]. On October 1, 2014, this Court entered an order identifying Lycurgan's notice of appeal as ineffective pending the resolution of

Lycurgan's timely filed post-judgment motions for new trial and attorney's fees. [Tab 13, AER 084–085.] On December 17, 2014, the district court denied the foregoing post-judgment motions. [Tabs 1-2, AER 001-017.] Accordingly, on December 22, 2014, Lycurgan filed an amended notice of appeal, adding the orders denying Lycurgan's motions for new trial and attorney's fees. [Tab 6, AER 066-68.] Thus, the instant appeal was timely under Rule 4 of the Federal Rules of Appellate Procedure.

This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from the final decisions of the district court below.

## III.  ISSUES PRESENTED

1.  Whether the Court erred in finding that Lycurgan was not the prevailing party in its action to unseal the search warrant affidavit when the Government unsealed the search warrant affidavit after full briefing and arguments on the action, and after the Court determined that the Government did not offer the requisite compelling reason for the continued sealing and demanded supplemental briefing.

2.  Whether the Court erred in finding that the Government's position to continue  sealing the search warrant affidavit was substantially justified based on the Government's contention that sealing is necessary in light of its pending, and publicly known, criminal investigation.

3.  Whether the Court erred in finding that the case, *United States v. Business*

*of Custer Battlefield Museum* (9th Cir. 2011) 658 F.3d 1188, 1191, substantially justified the Government's position to deny Plaintiff Lycurgan, Inc.'s access to the search warrant affidavit, even though the government and court in said case recognized the search target's right of access to the search warrant affidavit pending the criminal investigation.

4. Whether the Court erred in dismissing Lycurgan's case as moot based solely on the Government's arguments, and without affording Plaintiff an opportunity to respond.

5. Whether the Court erred in finding that "unique circumstances" warranted the redaction of the search warrant affiant's name to ensure the affiant's safety.

6. Whether the Court erred in finding that the redacted version of the search warrant affidavit provides Lycurgan all the information Plaintiff sought at the outset of this case.

7. Whether the Court erred in refusing to compel disclosure of an unredacted version of the search warrant affidavit to reveal the identity of the affiant ATF agent that falsely claimed products are "firearms," is sufficient.

8. Whether the Court erred in finding that there is no reasonable expectation that Lycurgan will be subject to the same action by the Government in the future.

## IV.   STATEMENT OF THE CASE

### A.   <u>Factual Background</u>

Dimitrios Karras ("Mr. Karras") is the Chief Executive Officer of Lycurgan, Inc. (formerly d/b/a "Ares Armor") ("Lycurgan"). [Tab 49, AER 364, ¶ 1.] Lycurgan is a small retail business with four locations: three in Oceanside, California and one in National City, California. [Tab 49, AER 364-65, ¶ 3.] In addition, it operates a website (www.aresarmor.com). [Tab 49, AER 365, ¶ 3.]

Lycurgan sells gun parts, holsters, cases, apparel, and backpacks, and a product known as an 80% AR-15 lower receiver. [*Id.*] An 80% lower is an industry term for an unfinished receiver, which is not a firearm according to prior determinations from the ATF. [*Id.*] Therefore, 80% lowers do not require a federal firearms license and are not regulated under the Gun Control Act of 1968. [*Id.*]  The sale of 80% lowers account for the vast amount of Lycurgan's sales and revenue. [*Id.*]

Lycurgan purchases and resells 80% lower receivers that are manufactured by EP Armory.[1]  [Tab 49, AER 365, ¶ 4.] EP Armory uses polymer to make its 80% lower receivers, which are no different from any other 80% lower receiver openly sold to the public. [*Id.*] EP Armory's product is in compliance with previous ATF

---

[1]Lycurgan sold most of its assets on November 28, 2014. Lycurgan is currently in possession of 5,786 EP80s. The very same EP80s that the ATF agents originally seized from Lycurgan during the search.

determinations and is not a firearm. [*Id.*]

The ATF raided EP Armory based on incorrect information about EP Armory's manufacturing process. [Tab 49, AER 365, ¶ 5.] The ATF was under the false impression that EP Armory was making a firearm and then reverting it back to the 80% stage by filling in the fire-control cavity. [*Id.*] But, at no point during the manufacturing process by EP Armory was a weapon made and then reverted. [*Id.*] The solid fire-control cavity is built first and the rest of the 80% casting is made around this "core" specifically so that their product at no time could be considered a firearm. [*Id.*]

On March 10, 2014, Mr. Karras received notice that the ATF was in the process of obtaining a warrant against Lycurgan based on the incorrect determination of EP Armory's product. [Tab 49, AER 365, ¶ 6.] The ATF offered to forego obtaining a warrant if Lycurgan was willing to hand over all of EP Armory's 80% lowers and Lycurgan's confidential customer list to the ATF. [*Id.*] Otherwise, the ATF indicated it would raid Lycurgan's facilities and pursue criminal charges against Mr. Karras and Lycurgan's employees. [*Id.*]        On March 11, 2014, Lycurgan, through counsel, filed a complaint against the ATF for deprivation of civil rights, and sought declaratory and injunctive relief. [Tab 49, AER 367, ¶ 7, Ex. A, AER 369-92.] The complaint explained why EP Armory's polymer 80% lower receiver is not a firearm. [Tab 49,

AER 375-76, ¶¶ 19-21.] Lycurgan requested a declaratory judgment affirming same. [Tab 49, AER 379, ¶ 2.] Lycurgan also requested a temporary restraining order against the seizure of Lycurgan's EP Armory inventory and customer list.[Tab 49, AER 379, ¶ 3.] On the same day, the Honorable Janis L. Sammartino of the trial court granted the temporary restraining order.[2] [Tab 49, AER 366, ¶ 7; Ex. B, AER 393-94.]

On March 14, 2014, the United States Attorney's Office filed an ex parte application challenging the temporary restraining order. [Tab 49, AER 366, ¶ 8; Ex. C, AER 395-401.] The application asserted that "[t]he receiver is the only part of the weapon that is considered a firearm." [Tab 49, AER 396.] This is misleading because Lycurgan does not sell receivers — it sells 80% lower receivers, which are not firearms. [See Tab 49, AER 382-85.] On the same day, the trial judge "clarified" the order, in a manner that essentially vacated the previously entered temporary restraining order which offered to protect Lycurgan from a search and seizure. [Tab 49, AER 366, ¶ 8; Ex. D, AER 403-04.]

Thereafter, the Government obtained a search warrant under seal to search Lycurgan's four leased real estate properties located at: (1) 206/208 N. Freeman St.,

---

[2] On December 23, 2014, the ATF returned only 5,786 of the 5,804 seized unfinished receivers.

Oceanside, CA 92054; (2) 416 National City Blvd., Unit B, National City, CA; (3) 180 Roymar St., Suite D, Oceanside, CA 92058; and (4) 2420 Industry, Suite A, Oceanside, CA.[Tab 49, AER 366, ¶ 9; Tab 34, AER 249-78] On March 15, 2014, the Government executed the search warrant, and numerous agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") swarmed Lycurgan's business properties. [*Id.*] During its search, the ATF seized and carried away a large number of polymer castings, among a multitude of other lawfully owned items that are necessary for the functioning of the business. [*Id.*]

On March 27, 2014, the ATF mailed a "NOTICE OF SEIZURE AND ADMINISTRATIVE FORFEITURE PROCEEDING" to Mr. Karras, in an attempt to withhold the seized items with an estimated value of $290,200.00. [Tab 49, AER 366-67, ¶ 10; AER 436-39.] The forfeiture notice incorrectly describes the seized items as "5,804 Unknown Manufacturer AR Type Receiver/Frame CAL: Unknown SN: None." [*Id.*] Such items are the property of Lycurgan in fee simple absolute. [Tab 49, AER 366-67, ¶ 10.] And they are not "AR Type Receiver/Frame." [Tab 49, AER 367, ¶ 10.] The items are not "receivers" or "frames" as such words are defined in the Gun Control Act of 1968, or prior interpretative determinations of the ATF under such Act. [Tab 49, AER 367, ¶ 10; AER 382-85.] On April 5, 2014, Lycurgan, through counsel, filed a verified claim, contesting the forfeiture and requesting the

initiation of a judicial proceeding to challenge such forfeiture. [Tab 49, AER 367, ¶ 10; AER 440-43.]

The ATF agents refused to disclose the affidavits and/or other documents supporting the search warrants ("Search Warrant Documents"). [Tab 48, AER 358-59, ¶ 6.] The ATF also refused to offer any reason for the non-disclosure. [*Id*.] The search and seizure caused significant and irreparable harm to Lycurgan. [Tab 49, AER 367, ¶ 11.] The ATF confiscated approximately $300,000 worth of inventory. [*Id*.] As demonstrated in the district court, Lycurgan continued to lose $200,000 in gross sales per month since the raid. [*Id*.] Lycurgan is contacted on a regular basis via Facebook, email and telephonically by people who are worried about their privacy and are afraid to spend money with the business. [*Id*.] Lycurgan continued to struggle as much of its essential business equipment remains in the possession of the government, and customers were extremely reluctant to do business with Lycurgan due to the ongoing ATF investigation. [*Id*.]

## B. <u>The Action Below</u>

On June 11, 2014, Lycurgan filed a motion to unseal the search warrant affidavit. [Tab 47, AER 336-56; Tab 51, AER 460, Doc. No. 1.] The Government opposed. [Tab 51, AER 461, Doc. No. 8.] Both parties fully briefed the matter, and presented oral arguments at the hearing on July 31, 2014 in the district court. [See

Tab 51, AER 460-61; AER 461, Doc. No. 11; see also Tab 5, AER 21-63.] At the conclusion of the hearing, the Court ordered the Government to submit supplemental briefing to justify maintaining the sealing of the search warrant affidavit. [See Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063; see also Tab 51, AER 461, Doc. No. 11.] Instead, the Government disclosed a redacted version of the affidavit on August 14, 2104, and called the issue moot. [Tab 34, AER 249-78; see also Tab 51, AER 461-62, Doc. No. 12.] On August 21, 2014, the Court agreed with the Government and dismissed the case. [Tab 51, AER 462; Tab 3, AER 019-020.] The redacted affidavit, however, did not disclose the names of the agents that participated in drafting and preparing the affidavit, nor was Lycurgan given an opportunity to respond to the Government's argument that the case is moot. [See Tab 34, AER 249-78.]

On September 16, 2014, Lycurgan filed a motion for a new trial or further action in the underlying action in light of the newly discovered evidence of the redacted search warrant, and on the grounds that Lycurgan's motion was not moot because the affidavit was insufficient and the issue was capable of repetition, yet evading review. [See Tab 51, AER 463, Doc. No. 23.]

On September 16, 2014, Lycurgan also filed a concurrent motion for attorney's fees as the prevailing party in the action following the Government's unsealing of the

search warrant affidavit.  [See Tab 51, AER 462, Doc. No. 18, 21, 29.]

On September 19, 2014, Lycurgan filed a notice of appeal from the Court's order denying its motion to unseal the search warrant affidavit as moot, prior to the Court ruling on the pending motions for new trial and attorney's fees.. [See Tab 51, AER 463, Doc. No. 26; Tab 24, AER 174-75.] On October 1, 2015, this Court issued an order holding the appeal in abeyance pending resolution of the motions below. [Tab 51, AER 464, Doc. No. 33; Tab 13, AER 084–085.]

On December 17, 2015, the district court issued orders denying both Lycurgan's motion for new trial and motion for attorney's fees on the grounds that the search warrant affidavit was sufficient and the issue was not capable of repetition, yet evading review, and that Lycurgan was not the prevailing party, respectively. [Tab 51, AER 466-67, Doc. No. 47-48; Tabs 1-2, AER 001-017.] On December 22, 2014, Lycurgan filed an amended notice of appeal, adding appeals as to the orders denying its motion for new trial and motion for attorney's fees. [Tab 51, AER 467, Doc. No. 49; Tab 7, AER 066-068.]

## V.    ARGUMENT

### A.  The District Court Erred in Denying Lycurgan's Motion
to Unseal Search Warrant Documents as Moot.

### Standard of Review

An appellate court reviews mootness de novo. *United States v. Montes-Ruiz*, 745 F.3d 1286, 1287 (9th Cir. 2014).    Mootness is a question of law reviewed *de novo*.  See *Southern California Painters & Allied Trades, Dist. Council Nov. 36 v. Rodin & Co.*, 558 F.3d 1028, 1034 n.6 (9th Cir. 2009); *United States v. Able Time, Inc.,* 545 F.3d 824, 828 (9th Cir. 2008); *Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d 1128, 1133 (9th Cir. 2004) ; *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).

With respect to the standard of review to determine whether a district court erred in refusing to allow the subject of a search to review the unredacted affidavit submitted in support of the search warrant, undersigned has been unable to determine a comparable standard.  Undersigned suggests that "if citizens are guaranteed by the Fourth Amendment the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," it is inherently a part of that right that they be allowed to know whether the Fourth Amendment's mandate of probable cause, supported by oath or affirmation, has been satisfied." *In re Search Warrants*

*Issued August 29, 1994*, 889 F. Supp. 296, 301 (S.D. Ohio 1995). That right should be subject to a strict scrutiny analysis, with the Government bearing the burden of demonstrating each element.

**Merits**

"Article III restricts federal courts to the resolution of cases and controversies." *Davis v. FEC*, 554 U.S. 724, 732 (2008), citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) The party invoking federal jurisdiction must have a personal interest at the commencement of litigation. *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English*, 520 U.S. at 67. Generally, if the actual controversy subsequently ceases to exist pending litigation, the case is "moot" and must be dismissed. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

An issue is not moot if it is capable of repetition, yet evading review. *Davis v. FEC*, 554 U.S. 724, 735 (2008) . "That exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.*, internal quotations omitted. Here, the issue of

Lycurgan's Fourth Amendment right to pre-indictment access to search warrant materials falls within this mootness exception because (1) the duration for sealing a search warrant affidavit is narrowly limited in time, and (2) the Government is free to obtain another search warrant under ongoing seal against Lycurgan at any time.

### 1. An Actual Controversy continues to exist because the redacted Search Warrant Affidavit is insufficient because portions remain sealed.

The district court erred in finding that release of the redacted search warrant affidavit was sufficient. The Government released the search warrant affidavit, which redacted critical information — the names of the agents who attested to the truthfulness of the information contained in the affidavit, and the names of the agents who determined a crime was committed. Lycurgan has now sued those affiants in a *Bivens* action as unknown named defendants.

The agents who obtained their warrant caused the seizure of Lycurgan's computer data, its customer lists, and EP80 items. Some of the material seized was not even listed on inventory sheets, including more than 30 "Rudius" 1911 handgun kits. Likewise, of 5,814 EP80 items seized, the ATF only returned 5,786, perhaps retaining the 18 as souvenirs.

The Fourth Amendment to the United States Constitution protects the rights of individuals "to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures." U.S. Const. Amend. IV. Corporations, like Lycurgan, are also protected against unreasonable searches and seizures under the Fourth Amendment. *Hale v. Henkel*, 201 U.S. 43 (1906) .

A search occurs when the Government acquires information by either "'physically intruding' on persons, houses, papers, or effects," "or otherwise invading an area in which the individual has a reasonable expectation of privacy." See *Florida v. Jardines*,    U.S.   , 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013). "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *United States v. Jones*,    U.S.   , 132 S. Ct. 945, 951 n. 5, 181 L. Ed. 2d 911 (2012).

The Fourth Amendment's Warrants Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U . S . Const. Amend. IV. Regarding the background underlying the Fourth Amendment, "[t]he British Crown had long used these questionable instruments to enter a political opponent's home and seize all his books and papers, hoping to find among them evidence of criminal activity." *Stanford v. Texas*, 379 U.S. 476, 482-83, 85 S. Ct. 506, 13 L. Ed. 2d 431 (1965). The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by

the British 'under the authority of 'general warrants. *Payton v. New York*, 445 U.S. 573, 583, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

"The Framers abhorred this practice, believing that 'papers are often the dearest property a man can have' and that permitting the Government to 'sweep away all papers whatsoever,' without any legal justification, 'would destroy all the comforts of society.'" *United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014), quoting *Entick v. Carrington*, 95 Eng. Rep. 807, 817-18 (C.P. 1765). As the Supreme Court has explained, the English case, *Entick*, was "undoubtedly familiar to every American statesman at the time the Constitution was adopted, and considered to be the true and ultimate expression of constitutional law with regard to search and seizure." *Jones*, 132 S. Ct. at 949 (internal quotation marks omitted).

Accordingly, "the [Warrants C]lause was intended as a bulwark against the 'general warrant' abhorred by the colonists and protects against 'a general, exploratory rummaging in a person's belongings.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)). "Its overarching purpose is to ensure that 'those searches deemed necessary should be as limited as possible.'" *Coolidge*, 403 U.S. at 467, 91 S. Ct. 2022. "To achieve its goal, the Warrants Clause requires particularity and forbids overbreadth." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009), citing *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006).

"Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited to the probable cause on which the warrant is based." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). The warrant served on Lycurgan was so broad, and lacking in particularity, as to allow the seizure of all of its papers and its computer files. And, the entirety of Lycurgan's customer list.

As explained above, the affiant ATF agents, who obtained the warrant by duplicitously recasting section 921 of Title 18 as prohibiting something it doesn't: selling an item which is arguably "readily convertible" to an AR-15 lower receiver. Through the misrepresentation, the affiant and his or her cohorts were able to gain access to Lycurgan's premises and data. Because no crime was charged, Lycurgan did not have the opportunity to formally challenge the warrant or the probable cause showing through a *Franks* hearing.

Courts have recognized that evidence obtained by government agents "in objectively reasonable reliance" on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion. See *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). When a government agent genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, "and

thus nothing to deter." *United States v. Leon*, 468 U.S. 897, 920-21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

To claim the benefits of the good faith exception, however, the agent's reliance on the duly issued warrant "must be objectively reasonable." *Id.* at 922, 104 S. Ct. 3405. Accordingly, the good faith exception cannot shield even an agent who relies on a duly issued warrant in at least four circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Leon*, 468 U.S. at 923.

Here, Lycurgan and its principals were never charged with a crime. Save its customer list and data files, 18 of the 5814 EP80 unfinished polymer lower receivers which mysteriously disappeared in ATF custody – and those items which Lycurgan is unable to prove that the raiding ATF agents pilfered while conducting the raid[3] – the ATF returned Lycurgan's property.

Courts have the duty to enforce the Fourth Amendment's protection against

---

[3] In fairness, misconduct by theft and vandalism seemed to be isolated to those agents conducting the raid at the National City location, and to those in the chain of custody of the items seized from Lycurgan's Oceanside warehouse.

unreasonable searches and seizures of individuals, whether accused of a crime or not. *Weeks v. United States,* 232 U.S. 383, 391 (1914) , overruled on other grounds by *Mapp v. Ohio,* 367 U.S. 643, 655-56 (1961). A search subject has a pre-indictment Fourth Amendment right to inspect the probable cause affidavit. *In re Search Warrants Issued on April 26, 2004,* 353 F. Supp. 2d 584, 591 (D. Md. 2004).) To deny the search subject of this right to inspection severely undermines the Fourth Amendment. See *In re Up North Plastics, Inc*. 940 F. Supp. 229, 232-33 (D. Minn. 1996) Accordingly, the sealing of search warrant materials is "an extraordinary action." See *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 589, *Id.*, omitting citations.

"The search subject's Fourth Amendment right to access of a search warrant affidavit is balanced against the government's right to oppose that access." *Id*. at p. 591. The government must demonstrate that: "1) there is a compelling governmental interest requiring materials to be kept under seal, and 2) there is no less restrictive means, such as redaction, available." (*Id*., citations omitted.) "[T]he burden is squarely placed upon the government." *In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d 577, 581 (D. Md. 2004). General or conclusory affirmations of a compelling governmental interest are insufficient. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 591-92; *In re Wag-Aero, Inc.*, 796 F. Supp. 394,

395 (E.D. Wisc. 1992). The government must make a specific factual showing that disclosure of the search warrant affidavit would result in actual harm. *In re Up North Plastics, Inc*., 940 F. Supp. at 233. The government did not do so here.

There is no legal authority that permits the government to withhold the names of the agents involved in applying for a search warrant affidavit. In *Ortiz v. Ollison* (C.D. Cal. 2009) 2009 U.S. Dist. LEXIS 117001, *16, the defendants filed a motion to unseal a search warrant affidavit. The defendants specifically requested the court to disclose information regarding the informant. *Id*. The court conducted an *in camera* hearing from which the court learned that the confidential informant was FBI Agent Donald Alway. *Id*. at p. *17. "The court thereafter revealed Alway's identity to defendants. The court further learned the source for Alway's information, but refused to disclose the informant's identity." *Id*.

Similarly here, the court should have ordered the Government to reveal the names of the agents involved in the application for the search warrant affidavit. The purported probable cause for the affidavit is the unidentified agents' interpretation of 18 U.S.C. § 921(a)(3)(A) in claiming that the seized parts are firearms. [Tab 34, AER 258-59, ¶ 19, AER 263, ¶ 36.] The unidentified agents are akin to expert witnesses, whose credibility is crucial. *Behler v. Hanlon* (D. Md. 2001) 199 F.R.D. 533, 556 ["The importance of credibility of witnesses to the trial of cases cannot be overstated,

and this is especially true with respect to expert witnesses."]. It is necessary for Petitioner to know the agents' identities to research the agents, challenge their credibility, determine if the agents were qualified to make the assertions in the affidavit, and determine if the agents previously made any contradictory findings. See *Id.*. Indeed, certain ATF agents previously determined that an 80% unfinished lower receiver is ***not*** a firearm. [Tab 49, AER 375-76, ¶¶ 19-21; AER 382-85.]

The Government failed to show that the redaction was necessary to protect the safety of the agents. See *supra*. There was also no reason to believe such disclosure would compromise the continuing investigation, as discussed above. There is no indication from the affidavit that any agent is or was currently working undercover or under some other guise. [See Tab 34, AER 249-78.] The Government has not, and cannot, show a compelling governmental interest to withhold the names of the agents involved in applying for the search warrant.

Likewise, the court failed to make any specific findings that support its conclusion that the "the redactions appropriate to protect the safety and privacy of the ATF agents, and the redactions do not appear to compromise the informational value of the affidavit to Petitioner. Accordingly, the Court DENIES AS MOOT Petitioner's Motion to Unseal Search Warrant Documents." [Tab 51, AER 463, Doc. No. 16; Tab 3, AER 018.]

The conclusion assumes that disclosure of the names would compromise the agent's safety. There is no right to file a secret warrant, thus a concern as the affiant has no reasonable expectation of privacy.

**2. The redacted names of the affiant agent and those other agents that "ginned up" the allegations in the warrant are Appellant Lycurgan's prospective Bivens defendants.**

Lycurgan has a significant interest in knowing the names of the agents who have determined that Lycurgan violated the law based on their subjective and disputed opinions. Namely, naming the agents is necessary for Lycurgan's present pursuit of its *Bivens* action in the district court arising from these agents alleged Fourth Amendment violations. The ATF agent who executed the affidavit before the magistrate misstated both fact and law in order to obtain a criminal search warrant against Lycurgan. That judicial deception violated Lycurgan's rights under the Fourth Amendment. Which, in turn, has precipitated a Bivens action against the affiant and the other agents. See, e.g., *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). Judicial deception is a recognized basis for a *Bivens* action. *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991).

The agent wrote in the affidavit at Paragraph 9, page 3, the following:

*Definition of a "Firearm"*
    9. A "firearm" is "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. §921 (a)(3)(A). This definition includes "the frame or receiver of any such weapon," 18 U.S.C. § 92l(a)(3)(B), and "any combination of parts either designed or intended" from which a firearm can be "readily assembled." 18 U.S.C. §921(a)(4)(C). A "receiver" under 18 U.S.C. § 921(a)(3)(B) includes a "lower receiver."

[Tab 34, AER 253.]

The above "description" is false. It is not the definition of a "firearm" under any federal law. The affiant agent mixed two statutory components to result in a definition which would necessarily mislead the magistrate issuing a warrant.

Section 921(a)(3) provides simply:

(3) The term "firearm" means
    (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
    *(B) the frame or receiver of any such weapon*;
    (C) any firearm muffler or firearm silencer; or
    (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. 921(a)(3)(*emphasis added*).

Section 921(a)(4) provides in pertinent part:

(4) The term "destructive device" means—
    (A) any explosive, incendiary, or poison gas—

23

(i) bomb,

(ii) grenade,

(iii) rocket having a propellant charge of more than four ounces,

(iv) missile having an explosive or incendiary charge of more than one-quarter ounce,

(v) mine, or

(vi) device similar to any of the devices described in the preceding clauses;

(B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and *from which a destructive device may be readily assembled*.

18 U.S.C. 921(a)(4).

Within the second to the last line of the suggested definition of a "firearm", the affiant substituted "firearm" for the phrase "destructive device." In order to obtain the warrant, the affiant ATF agent combined portions of the section defining a "destructive device" with the section defining a firearm. This was significant because the definition of a firearm as a weapon includes a weapon that can be readily converted to expel a projectile. § 921(a)(3)(A). Similarly, a destructive device

includes "any combination of parts either designed or intended for use in converting any device into any destructive device . . ." § 921(a)(4)(C). But the elements are different for a finding that a "receiver" is a firearm.

Within the statute, there is no language suggesting that an item that may be readily convertible into a "receiver" is a firearm. The affidavit plainly misstates the statute. The mis-statement was crucial in establishing probable cause.

The affiant ATF agent also stated that, "A "receiver" under 18 U.S.C. §921(a)(3)(B) includes a "lower receiver." [Tab 34, AER 253.] The words "lower receiver" are absent in section §921(a)(3)(B). The agent knew that this statement was false and that there are many types of fully complete "lower receivers" which the agency does not consider to be a "firearm" under §921(a)(3)(B). Indeed, the characteristics which define a receiver are set forth at 27 C.F.R. 478.11.

At paragraph 19 of the Affidavit, the affiant ATF agent misstated the facts in representing that, "…the receiver and plug being are [sic] formed in such a way that they are not adhered to each other. As such, the plug can be removed and the firearm can readily be placed into a firing condition." [Tab 34, AER 258.] But, the agent knew that the materials are bonded; the plug could not be removed without cutting it from the EP80.

At paragraph 19 the affiant ATF agent misstated the law when the agent told

the Magistrate that, "indexing of the fire-control-cavity ... constitutes the making of a firearm frame or receiver as defined by 18 U.S.C. 921(a)(3)(A)."  [Tab 34, AER 258.] .  The affiant agent knew that 18 U.S.C. 921(a)(3)(A) provides no definition of a "firearm frame or receiver."   Rather the definition of "firearm frame or receiver" is found at 27 CFR 478.11. That definition unambiguously defines a "receiver" as, "that part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 CFR 478.11.  The EP80 items, as sold, lacked such function or ability to "provide[] housing for the hammer, bolt or breechblock and firing mechanism." 27 CFR 478.11.  Even if milled out, the EP80 item could only house the hammer and firing mechanism.

The Fourth Amendment prohibits an affiant from including "a false statement knowingly and intentionally, or with reckless disregard for the truth," by the affiant in the warrant affidavit to the extent that "the allegedly false statement is necessary to the finding of probable cause." See, *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), citing *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).   There are numerous other misrepresentations within the affidavit which will be addressed in the *Bivens* action pending before the District Court.  The Government refuses to identify the affiant agent or his or her colleagues that are

referenced in the affidavit.  Thus, the issue is not "moot."

**3. The issues below are capable of repetition, yet evade review**.

Apart from refusing to unseal the names of the agents who are prospective *Bivens* defendants, Lycurgan also seeks reversal on the grounds that, *inter alia*, it is not *absolutely clear* that the Government's wrongful behavior could not reasonably be expected to recur.  For that reason, and those that follow, the district court erred in finding that the circumstances present in this case are not capable of repetition, yet evading review.

There are several exceptions to the "mootness" doctrine that preserve the court's jurisdiction even where the relief sought by a party has already been provided or is no longer available.  *Public Service Co. v. Federal Energy Regulatory Com.* (10th Cir. 1987) 832 F.2d 1201, 1208, n. 7.  As applicable here, a case is not moot if the issue is "capable of repetition, yet evading review."  *Southern Pacific Terminal Co. v. ICC* (2011) 219 U.S. 498, 515.  "That exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Davis v. FEC* (2008) 554 U.S. 724, 735, internal quotations omitted.

### a. There Is A Reasonable Expectation That Lycurgan Will Be Subject to Another Search And Seizure Based Upon A Sealed Affidavit

"Voluntary cessation of challenged conduct moots a case, however, only if it is '***absolutely clear*** that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors v. Slater*, 528 U.S. 216, 222 (2000), quoting *United States v. Concentrated Phosphate Export Assn., Inc*., 393 U.S. 199, 203 (1968). The party asserting mootness has a "'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" *Adarand Constructors*, 528 U.S. at 222, quoting *Friends of the Earth, Inc*., 528 U.S. 167 at p. 189. The reason is due to the risk that voluntary cessation will allow the defendant "to return to his old ways." *Concentrated Phosphate Export Assn., Inc*. 393 U.S. 199, 203 (1968), quotation omitted.

The Government cannot meet its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc*., 528 U.S. 167 at p. 190. The Government's burden is further enhanced because the Government is the alleged wrongdoer in this matter. See *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1237(9th Cir. 1999) ["It is possible, of course, that a defendant's conduct can moot the need for injunctive relief, but the 'test for mootness in cases such as this is a stringent one,'" quoting

*Concentrated Phosphate Export Ass'n., Inc.*, 393 U.S. at 203.].)

The San Diego ATF made a habit of trampling Lycurgan's Constitutional rights — in addition to the searches and seizures of Lycurgan and its property, ATF agents made express remarks within the subject affidavit as to Lycurgan's First Amendment activities. (See *infra*.) When challenged, the ATF responds to render Lycurgan's efforts in court "moot." First, the ATF seized substantial business inventory from Lycurgan and provided notice of a civil forfeiture proceeding. (See *supra*.) The ATF then allowed more than three months to lapse, during which Lycurgan was deprived of its lawful property and incurred attorney's fees and costs in preparing for the civil forfeiture proceeding. Then the ATF drafted a two-sentence letter informing Lycurgan it was no longer pursuing forfeiture but would continue to retain Lycurgan's property.[4] [Tab 25, AER 176.]

The ATF forced Lycurgan to spend five months pondering why the Government raided its business and seized its property. The ATF forced Lycurgan to incur attorney's fees and costs in fully briefing and arguing its motion to unseal the search warrant affidavit before the district court. (See *supra*.) Only after the district

_____

[4] As set out above, the Government ultimately returned some of the seized physical property. No charges were brought against Lycurgan or its principal. But the Government retained Lycurgan's customer list – and 18 of the polymer EP80 items.

court indicated that the ATF would have to justify the basis for keeping the affidavit sealed did the ATF finally offer to unseal portions. (See *supra*.) This issue is not moot, and will likely occur again.

The substance of the Affidavit offered to support the issuance of the search warrant indicates that ATF personnel were offended by Lycurgan's First Amendment conduct. The ATF specifically cited to the conduct of Lycurgan's principals to obtain issuance of the search warrant. Specifically,

- The ATF agent noted that Lycurgan had sought a Temporary Restraining Order against the ATF [Tab 34, AER 261, ¶ 30],

- The ATF agent noted that Lycurgan's principal Dimitri Karras's concern was having to give up the customer records that ATF was requesting. [*Id.*]

- The ATF agent noted that "KARRAS disagreed that the EP Armory lowers should be considered firearms. This disagreement was one of the reasons he obtained a Temporary Restraining Order (TRO) against ATF, in addition to that fact that KARRAS did not want to voluntarily provide the EP Armory list of purchasers to ATF." [Tab 34, AER 263, ¶ 36.]

- That ATF agent described the target location in National City, which suffered the particularly distasteful acts of vandalism and the off-the-

book seizure of valuable unfinished pistol frames, as:

> "The building is a duplex in which the southern storefront has Ares Armor logo decal affixed to the store front. In addition, there is a billboard above the building which has a picture of an AR 15 variant rifle "Ares Armor" and "Unserialized. No Registration. Legal" **written on the billboard**."

[Tab 34, AER 264, ¶ 40.]

These statements reflect ATF's animus towards Lycurgan. The ATF's animus shows no signs of dispelling. Lycurgan still operates its business under the same model that the Government alleges is unlawful.[5] *Contra City News & Novelty v. City of Waukesha,* 531 U.S. 278, 284 (2001)[A challenge to a license renewal proceedings became moot when the licensee (plaintiff) voluntarily withdrew its renewal application and closed its business with no plan of reopening].) Therefore, the ATF is "free to return to its illegal action at any time" in raiding Lycurgan and denying Lycurgan's Fourth Amendment right to inspect the search warrant affidavit. (*FTC,* 179 F.3d at 1237 ["The standard for the voluntary cessation exception to mootness

---

[5] While Lycurgan did bulk sale most of its assets, it retained rights in the purchase agreement to continue to sell the EP80 product at dispute.

is 'whether the defendant is free to return to its illegal action at any time,'" quotation omitted.].) It is not "absolutely clear" that the Government will not conduct a similar search and seizure under seal. (*Id.*, omitting citations.)

It is likely the ATF will raid Lycurgan again — or those with similar businesses or viewpoints — in light of Lycurgan's continued operation and the ATF's strained interpretations of federal firearm laws. Further, in light of the reasons advanced by the Government in sealing its search warrant affidavits, there is no indication that the ATF would not file all future search warrant affidavits under seal, and refuse to disclose them to raid targets. The ATF finally disclosed the affidavit to Lycurgan only after the Court ordered the ATF to substantiate its continued sealing of the affidavit. Until then, the ATF vigorously fought to keep the affidavit under seal despite having no compelling interest. (See *supra*.)

In *In re Application of United States of America for Order Authorizing the Installation of a Pen Register or Touch-Tone Decoder and a Terminating Trap, Bell Telephone Company of Pennsylvania*, 610 F.2d 1148, 1150 (3d Cir. 1979), telephone companies challenged the district court's authority to order them to assist law enforcement agents in the tracing of telephone calls. The telephone companies fully complied with the law enforcement agents in assisting them in tracing telephone calls. Nevertheless, the court held the case was not moot because it was an issue "capable

of repetition, yet evading review." (*Id*. at 1153.) The court reasoned that "[n]othing indicates that federal law enforcement officials will not continue to seek tracing orders requiring the assistance of these companies." (*Id*.)

Similarly here, nothing indicates that the ATF will refrain from application for another search warrant against Lycurgan, while continuing to refuse to allow Lycurgan to inspect those portions of the affidavit with the unredacted names of the ATF agents. At the very least, it is unclear that the ATF refrain from such conduct. Further, a ruling on this issue whether a search target has a pre-indictment right to inspect the search warrant affidavit is particularly valuable due to the uncertainty in this area of the law. As the district court noted during the July 31, 2014 hearing on the motion to unseal the affidavit, the law is unsettled on this issue, and the sparse case precedent is conflicting. [Tab 5, AER 022-23, 029-030.] This is an important issue that affects not only Lycurgan, but all individuals and entities who may be the target of a search and seizure. Lycurgan and the ATF have fully briefed this issue and argued it before this Court. The Court's ruling on this issue will prevent Lycurgan from having to re-litigate this matter and will offer much needed legal precedent in an unsettled area of the law. Accordingly, the district court's order denying as moot Lycurgan's motion to unseal search warrant documents and subsequent motion for new trial, should be reversed.

**b. Properly, sealing of a Search Warrant Affidavit is to be limited in duration.**

As to the second prong of the exception to the mootness doctrine, the challenged action too short in duration to be fully litigated prior to cessation or expiration because, *inter alia*, the ATF is free to unseal the search warrant at any time it pleases, or because any given investigation may terminate within a short period of time.

The United States Supreme Court held that a controversy that lasts two years is capable of evading review. See *Southern Pacific Terminal Co.*, 219 U.S. at 514-16. The Court has also held that "18 months [is] too short a period of time . . . to obtain complete judicial review." *First Nat'l Bank v. Bellotti* , 435 U.S. 765, 774 (1978) . The Ninth Circuit has held that regulations in effect for one year do not last long enough for judicial review. *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999) ; *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329-30 (9th Cir. 1993).

The sealing of a search warrant affidavit is inherently limited in duration because "the time period to continue the sealing must be both reasonable and definite." *In re Search of Up North Plastics, Inc*., 940 F.Supp. 229, 233 (D. Minn. 1996); *In re 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 419-20 (D. Md. 2011)

["[T]he subject's Fourth Amendment right must only yield to the government's compelling interest for a reasonable period of time."].  Courts are reluctant to allow a search warrant affidavit to be sealed longer than five months.  *In re Matter of the Search of a Residence*, 121 F.R.D. 78, 80 (E.D. Wisc. 1988) ["At the hearing, this court indicated that the government's reasons for a continuation of confidentiality had started to wear thin, especially after almost 150 days."].

In an analogous case, two newspaper companies filed a motion to unseal a search warrant affidavit.  *Indianapolis Star v. United States (In re Fair Fin.),* 692 F.3d 424, 428 (6th Cir. 2012).  The district court denied the motion to unseal, and the newspapers appealed.  *Id.*  During the appeal, the government moved to unseal the search warrant documents, which the court granted.  *Id.*  The appellate court held that it still retained jurisdiction over the issues presented in the newspapers' motion to unseal because the matter was "capable of repetition yet evading review."  *Id.*  The court reasoned that "[t]he proceedings involved with orders to seal of the type at issue here are often too short to be fully litigated."  *Id.*  The court then ruled on the merits of the newspapers' motion to unseal, deciding the issues of: (1) whether there is a First Amendment right of access to search warrant documents, (2) whether the district court's order denying the motion to unseal failed to make specific findings and conclusions, and (3) whether search warrant documents may be sealed indefinitely.

*Id*. at 429-434.

Here, the entire search warrant affidavit was sealed for approximately five months, with the names of the prospective *Bivens* defendant agents remaining sealed. This is not enough time for judicial review. In other cases, a search warrant affidavit may be sealed longer, but only for a "reasonable period of time," likely under one year. *In re 14416 Coral Gables Way*, *Id.*, 946 F. Supp. 2d at 419-20; *In re Matter of the Search of a Residence,* 121 F.R.D. at 80. Therefore, the instant issue of whether the target of a search and seizure is entitled to a pre-indictment right to inspect the search warrant affidavit under the Fourth Amendment is capable of evading review.

In sum, the district court erred in denying Lycurgan's motion to unseal search warrant documents as moot, and its subsequent motion for new trial because the circumstances present in the case are those that are capable of repetition, yet evading review. The district court's orders below should accordingly be reversed.

**B. The District Court erred in denying Lycurgan's motion for new trial.**

**<u>Standard of Review</u>**

A district court's ruling on a motion for new trial pursuant to Rule 59(a) is reviewed for an abuse of discretion. See *Kode v. Carlson,* 596 F.3d 608, 612 (9th Cir. 2010)

**Merits**

Pursuant to Federal Rule of Civil Procedure 59(a)(2), after a nonjury trial, "the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). A district court "may grant a new trial or amend its judgment after a court-tried action for three reasons: (1) manifest error of law; (2) manifest error of fact; and (3) newly-discovered evidence." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1174 (N.D. Cal. 2009), citing *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978).

Here, the district court never even allowed the briefing regarding the effect of the redacted affidavit before dismissing the case. Here, Lycurgan availed itself of the New Trial motion as a vehicle to point out the impropriety of allowing even limited redaction.

**C. The District Court erred in denying Lycurgan's Motion for Attorneys Fees.**

**Standard of Review.**

The Ninth Circuit We review the district court's denial of attorney's fees under EAJA for an abuse of discretion. Meier v. Colvin, 727 F.3d 867, 869 (9th Cir. 2013). A district court abuses its discretion when it fails to apply the

correct legal rule or its application of the correct legal rule is illogical, implausible or without support in inferences that may be drawn from the facts in the record. *Id.* at 870, citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

**Merits.**

Under the Equal Access to Justice Act ("EAJA"), a prevailing party in a civil action by or against the United States may be entitled to costs. 28 U.S.C. § 2412(a). Section 2412(b) makes the United States liable for fees and costs "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." *Scarborough v. Principi*, 541 U.S. 401, 407 (2004), quoting § 2412(b).

While an award of costs under section 2412(a) is discretionary, "[a]ttorney fees and expenses *must* be awarded when the Government's position is not 'substantially justified.'" *Neal & Co. v. United States,* 121 F.3d 683, 686, (Fed. Cir. 1997) emphasis in original, quoting section 2412(d)(1)(A).]; *Maritime Mgmt, Inc. v. United States,* 242 F.3d 1326, 1332 (2001).

The rationale for requiring the Government to pay attorney's fees to the

prevailing party under section 2412(d) is to "encourage members of the public to assist in the 'valuable public service [of] improving the efficiency of government operations.'" *United States v. Hallmark Constr. Co.,* 200 F.3d 1076, 1080 (7th Cir. 2000) , quoting *Gotches v. Heckler*, 773 F.3d 108, 111 (7th Cir. 1985).

A party seeking a section 2412(d) fee award must file an application with the court within 30 days of "final judgment." 28 U.S.C. § 2412(d)(1)(B). The application must show: (A) the party prevailed, (B) the party is entitled to fees under this provision, (C) there was no substantial justification for the position of the United States, (D) there are no special circumstances that make an award unjust, and (E) the amount sought, with an itemized time record for attorney's fees. See *Sims v. Apfel,* 238 F.3d 597, 599-600 (5th Cir. 2001); § 2412(d)(1)(B).)

The district court denied Lycurgan's motion on the grounds that (1) Lycurgan was not the prevailing party and (2) that the Government was substantially justified. [See Tabs 1-2, AER 1-17.]

**1. The District Court erred in finding that Lycurgan was not the prevailing party because the Government ultimately provided Lycurgan a redacted search warrant following tentative ruling from the District Court which comprised a *judicial imprimitur*.**

"While the EAJA contains no applicable definition of 'prevailing party,' we consider claimants 'prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *United States v. Real Property Known as 22249 Dolorosa St., Woodland Hills, Calif.*, 190 F.3d 977, 981, (9th Cir. 1999) quoting *National Wildlife Fed'n v. Federal Energy Regulatory Comm'n*, 870 F.2d 542, 544 (9th Cir. 1989) and *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Here, Lycurgan brought this suit to unseal the search warrant affidavit that was used to authorize the expansive and destructive raid of Lycurgan's four business facilities. After fully litigating this matter, and receiving comments from the District Court, the Government disclosed the affidavit, while redacting only the names of the investigating agents involved. [See Tab 34, AER 249-78; see also Tab 51, AER 461-62, Doc. No. 12.]

Thus, Lycurgan achieved its principal goal, which the Government vigorously opposed up to and through briefing and oral argument. [See *supra*.] Although the

names of the ATF agents involved in preparing the affidavit are redacted, Lycurgan can read the factual portions of the affidavit. *Neal & Co*, 121 F.3d at 685 ["[A] party may prevail without winning a complete victory or fully recovering its requested damages."].) The affidavit confirmed Lycurgan's belief that the ATF published misrepresentations, material omissions, and that absent the mistatements – the affidavit would fail to establish probable cause. [See Tab 34, AER 249-78.] The newly discovered facts gained from the unsealed affidavit formed the basis for a *Bivens* action that Lycurgan filed against the ATF agents involved in the search, seizure, thefts and vandalism of Lycurgan's premises and property.

Because the Government "voluntarily" unsealed the affidavit after the comments from the Court, and the Court subsequently dismissed the case as moot, the Government successfully argued that Lycurgan had no right to fees. See *Rhodes v. Stewart,* 488 U.S. 1, 3 (1988) [holding that the plaintiff was not entitled to an award of attorney's fees because "[t]he case was moot before judgment, and the judgment therefore afforded the plaintiffs no relief whatsoever."].) It is binding Ninth Circuit precedent, however, that prevailing party status is preserved if the case becomes moot after the party achieves its objective. *Montes v. Thornburgh,* 919 F.2d 531, 538 (9th Cir. 1990) [noting that "the inapplicability of *Rhodes* is obvious . . . [because] [h]ere, the case became moot only because appellees achieved their objective."]. *Montes* is

the controlling case.

Similar to *Montes*, the district court ruled the instant case is moot only because Lycurgan achieved its objective in unsealing the affidavit. Thus, the "mootness" issue does not affect Lycurgan's status as the "prevailing party" within the meaning of the EAJA. *Montes*, 919 F.2d at 538. This is particularly so here where the Government unsealed the Affidavit **only after** the Court indicated it was inclined to enter a judgment on the merits in favor of Lycurgan unless the Government could support its position with supplemental briefing. [See Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063; cf. *Dean v. Riser* (5th Cir. 2001) 240 F.3d 505, 511 ["[W]e hold that a defendant is not a prevailing party within the meaning of § 1988 when a civil rights plaintiff voluntarily dismisses his claim, unless the defendant can demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits."].

In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001), fees were denied under the ADA and FHAA because the mere filing of the litigation caused the change, rather than a legal change in parties relationship. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610, 121 S.Ct. 1835, 1843 (2001)[". . . we hold that the "catalyst theory" is not a permissible basis for the award of attorney's fees under the

FHAA, 42 U.S.C. § 3613(c)(2), and ADA, 42 U.S.C. § 12205."]

This case differs from *Buckhannon* in that the district court suggested a tentative ruling. Here, the district court signaled its intention, which prodded the ATF to release a redacted version of the affidavit. Namely, the district court ordered the Government to file supplemental briefing to justify its refusal to produce the search warrant affidavit. [See Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063.]

Rather than provide briefing, the Government instead produced a redacted version search warrant affidavit. [See Tab 51, AER 461-62, Doc. No. 12; Tab 34, AER 249-78.] The comments by the district court suffice as a sufficient judicial imprimatur to satisfy the prevailing party standard of *Buckhannon*. See, *Jianping Li v. Keisler*, 505 F.3d 913, 918 (9th Cir. 2007)[An order by a Circuit Mediator granting an unopposed motion to remand a case to the BIA pursuant to General Orders bears a sufficient judicial imprimatur to satisfy the prevailing party standard of *Buckhannon*."]

Disapproving of the effect *Buckhannon* had on the disclosure policies of administrative agencies, Congress enacted the OPEN Government Act of 2007 to establish that the catalyst theory applied in FOIA cases. See *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 370, 380 U.S. App. D.C. 339 (D.C. Cir. 2008). Under the new statute, a plaintiff "substantially prevail[s]" (and is thus eligible for a fee award) if his

suit yields relief in the form of "a judicial order, or an enforceable written agreement or consent decree" or "a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii) (Supp. III 2009) [hereinafter 2007 Act]. *Davis v. United States DOJ*, 391 U.S. App. D.C. 365, 367, 610 F.3d 750, 752 (2010).

Here, Lycurgan satisfies the prevailing party standard set forth in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources* by establishing that these federal court actions resulted in a "material alteration of the legal relationship of the parties" and that the alteration was "judicially sanctioned." 532 U.S. 598, 604-05, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

### a. The District Court Erred In Finding That The Government's Refusal To Unseal The Search Warrant Was Substantially Justified

The Government had the burden of showing "substantial justification" to defeat a section 2412(d) prevailing party fee award. *Love v. Reilly,* 924 F.2d 1492, 1494 (9th Cir. 1991); *22249 Dolorosa St.*, 190 F.3d at 983-84.) The Government "must demonstrate that its position had 'a reasonable basis both in law and fact.'" (*22249 Dolorosa St.*, 190 F.3d at 983-84, quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1987).)

The government lacked any substantial justification in refusing to unseal the

search warrant after it was executed. [See Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063.] Previously, the Government supported its position based on a general assertion that there was an ongoing criminal investigation, despite the fact that district court originally indicated during oral argument that such a general assertion is inadequate. [See Tab 5, AER 040-041, 043; Tab 15, AER 092, ¶ 14.] Specifically, the Government asserted "that the criminal investigation was ongoing . . . seems to be highly probative in regards to whether a search warrant affidavit may permissibly remain sealed." [Tab 40, AER 325.] In fact, the mere existence of an ongoing investigation is not probative. (See *In re 14416 Coral Gables Way,* 946 F. Supp. 2d 414, 420-21 (D. Md. 2011) ; *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 301 (S.D. Ohio 1995) ; *Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 573 (4th Cir. 2004) .) Instead, the relevant consideration is whether unsealing the Affidavit would compromise the investigation or create a threat of officer safety. (*Id.*) The Government declined to address this issue, despite having four opportunities to do so.[6]

The Government merely listed the general concerns inherent in any ongoing

---

[6] The Government had four opportunities to provide a factual explanation for why unsealing the Affidavit would be problematic, including: (1) the opposition brief to Lycurgan's Motion to Unseal, (2) oral argument on the Motion to Unseal, (3) supplemental briefing to oppose the Motion to Unseal, and (4) the opposition brief to Lycurgan's Fee Motion.

criminal investigation. [Tab 40, AER 325.]  Such concerns are inapplicable to the then actual ongoing criminal investigations of Lycurgan and EP Armory because the Government already conducted public searches and seizures of both businesses. [Tab 36, AER 315.] Further, Lycurgan and its attorney learned the details of the investigation through negotiations and correspondence with the ATF leading up to the raids.  See *supra*, pp. 9-11; *cf. United States v. Bus. of the Custer Battlefield Museum,* 658 F.3d 1188, 1191 (9th Cir. 2011)["[T]he government . . . [gave] Kortlander access to the [search warrant] records, acknowledging that Kortlander and his attorney had already learned the 'details of investigation in the course of negotiation' in the case....".]

It is well settled that the Government has the burden to demonstrate and support a "compelling government interest" to keep a search warrant affidavit under seal. *In re Searches & Seizures*, 2008 U.S. Dist. LEXIS 107087 *14 (E.D. Cal. December 19, 2008);  *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 591-92 (D. Md. 2005); *Up North Plastics, Inc*., 940 F. Supp. 229, 233-34 (D. Minn. 1996); *In re Wag-Aero, Inc*., 796 F. Supp. 394, 395  (E.D. Wis. 1992) . General assertions about protecting an ongoing criminal investigation is insufficient to meet the government's burden.  (See *id.*) At oral argument on this matter, this Court indicated that the Government failed to meet its burden to demonstrate and support

a compelling governmental interest to continue sealing the affidavit. [See Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063; AER 041 ["The reasons that you offer suggest there was a compelling government interest at the time of the issuance of the warrant. However, now that the warrant has been executed, many of those concerns appear to have been obviated"].]. Nevertheless, the Court provided the Government a second opportunity and to submit supplemental briefing to support the Government's position. *Id.* After some discussion, the Government agreed to provide supplemental briefing. *Id.* Instead, the Government ceded and disclosed a slightly redacted version of the Affidavit. [See Tab 34, AER 249-78; see also Tab 51, AER 461-62, Doc. No. 12.]

If the Government was substantially justified in its actions and genuinely concerned that unsealing the affidavit would compromise an ongoing criminal investigation or threaten officer safety, then why did the Government cede? What happened in the mere two weeks between July 31, 2014 (oral argument) and August 14, 2014 (unsealed affidavit) that suddenly made it reasonable to unseal the Affidavit? Why did the Government vigorously oppose unsealing the Affidavit even *after* the Government made its investigations of EP Armory and Lycurgan public? Why did the Government oppose granting Lycurgan access to the Affidavit, while the government in *Custer Battlefield Museum* freely granted such access to Kortlander?

For the foregoing reasons, and the reasons discussed below, there was simply no reasonable basis in law or fact for the Government to refuse to unseal the search warrant.

**b.   The District Court Erred in Relying On First Amendment Cases Cited By The Government**

Lycurgan argued below that the Government's position was not substantially justified because it relied exclusively on inapposite First Amendment cases.  There is a fundamental difference between the First Amendment right of the media to access search warrant documents, and the Fourth Amendment right of the victim of an allegedly unreasonable search and seizure to access the search warrant documents. *In re Searches and Seizures*,  2008 U.S. Dist. LEXIS 107087, 8-10  (E.D. Cal. 2008).  As Lycurgan argued below, *Times Mirror Co. v. United States,* 873 F.2d 1210 (9th Cir. 2011) , and the related First Amendment cases cited by the Government are inapposite.

In *In re Searches and Seizures*, the Government argued that in *Times Mirror Co.*, the Ninth Circuit held that sealed warrant affidavits should not be ordered unsealed before an indictment is returned. The court disagreed:

In *Times Mirror Co.* the court was faced with attempts by various media organizations to unseal search warrants and supporting affidavits that

had previously been ordered sealed by the district court. The issues presented in that case were whether the media has a qualified right of access to search warrants and supporting affidavits during the pre-indictment stage of a criminal investigation under the First Amendment, Federal Rule of Criminal Procedure 41 or pursuant to common law. The Ninth Circuit merely held that the media had no such right of access and affirmed the district courts' orders maintaining the warrant materials under indefinite seal. The court did not address the entirely different question of a property owner's abiding interest in challenging the reasonableness of the government's invasion of his property and/or privacy, which is left unanswered by inquiries into the general public's right of access to search warrants materials.

*Searches and Seizures*, 2008 U.S. Dist. LEXIS 107087, 8-10, quoting *In re Search Warrants Issued on April 26, 2004* (D. Md. 2004) 353 F. Supp. 2d 584, 591, and collecting cases.

The district court cited seven cases that addressed the question unanswered by *Times Mirror Co.*, which all recognized "a search subject's pre-indictment Fourth Amendment right to inspect the probable cause affidavit." (See *id.*)

During oral argument in this matter, the district court questioned the Government about the applicability of *Times Mirror Co.* in this Fourth Amendment case. [Tab 5, AER 038-039 ["You rely on *Times Mirror Co. v. U.S.*, a Ninth Circuit case, holding that the *public* lacks a preindictment First Amendment right of access to search warrant documents. Petitioner however argues that it has a Fourth Amendment right of access to these documents because petitioner as the target of a search warrant that has been deprived of his property has the right to contest the constitutionality of the search. In light of this significant difference, why shouldn't the court disregard *Times Mirror* as irrelevant?."].] Counsel for the ATF contended the case is moot because the Government is no longer pursuing the civil forfeiture proceeding. [Tab 5, AER 039-040.] The Government repeatedly resorted to substantially the same response to other questions from the Court.[7] (*Id.*) The

---

[7] The civil forfeiture proceeding that the Government initiated established but one, among several, reasons to support Lycurgan's need to access the affidavit. The main purpose of the Motion was to enable Lycurgan to adequately challenge the search and seizure and possibly file a *Bivens* action against the Government if so warranted. Thus, the Government's subsequent withdrawal of the civil forfeiture did not moot this case. The district court agreed. [See Tab 5, AER 021-063.] At the conclusion of oral argument, the district court ordered the Government to submit supplemental briefing to support its position. [*Id.*] The Government resisted this order, continuing to argue that supplemental briefing is not necessary because the Government's abandonment of the civil forfeiture somehow mooted this case. [*Id.*] Again, the Court disagreed that the withdrawal of the civil forfeiture mooted this case. [*Id.*] Eventually, the Government orally agreed to comply with the Court's order to submit supplemental briefing. [*Id.*]

Government, at no time in its briefing or during oral argument, presented *any* legal authority to justify its position that Lycurgan did not have a Fourth Amendment right to pre-indictment access of the Affidavit. [See Tab 5, AER 021-063.] On the contrary, Lycurgan presented multiple cases that recognized such a right. *Id.*

The Government disagreed that it relied "exclusively" on First Amendment cases because it had cited to *United States v. Bus. of the Custer Battlefield Museum,* 658 F.3d 1188 (9th Cir. 2011). [See Tab 34, AER 81-83.] The Government claimed *Custer Battlefield Museum* is a "'Fourth Amendment' case that is similar to the instant case." *Id.* Contrary to the Government's contentions, however, *Custer Battlefield Museum* does not discuss or concern the Fourth Amendment. The very first paragraph reads: "We decide *whether the public has a common law or First Amendment right of access* to materials filed in support of search warrant applications after an investigation has been terminated." *United States v. Bus. of the Custer Battlefield Museum,* 658 F.3d 1188, 1190 (9th Cir. 2011), *emphasis added*.

Further, *Custer Battlefield Museum* illustrates the unreasonableness of the Government's position. In that case, Christopher Kortlander was criminally investigated, and his museum was the subject of two separate search warrants. *Id.* at p. 1192. Kortlander sought to have the warrant affidavits ordered unsealed and disclosed to the public based on "the public's qualified First Amendment right of

access to judicial proceedings." *Id*. at p. 1191. The government objected to disclosure to the public. *Id*. However, the government did not object to Kortlander's and his attorney's access to the affidavits for their personal review and/or inclusion in any future court filings. *Id*. The government reasoned that Kortlander and his attorney had already learned the details of the investigation in the course of negotiation. *Id*.

"The district court granted Kortlander's request for access to the warrant materials, but limited Kortlander's access in accordance with the government's suggestions." *Id*. Kortlander appealed. *Id*. at p. 1192. The Court of Appeal affirmed Kortlander's access to the warrant materials, and further noted that the public has a qualified common law right of access to the materials as well. *Id*. at p. 1196.

It is curious why the Government highlighted this case in its opposition brief below, which further confirmed that the Government's position was not substantially justified. In *Custer Battlefield Museum*, unlike in this case, the government did ***not*** oppose the search target's access to the search warrant affidavit. *Id*. at p. 1191. Further, the *Custer Battlefield Museum* court held that the search target, and possibly the public as well, were entitled to review the search warrant affidavit. *Id*. at p. 1196. In light of the foregoing, the district court erred in relying on *Custer Battlefield Museum* in finding that the Government was substantially justified in refusing to

allow Lycurgan to inspect the affidavit.

In sum, the district court erred in denying Lycurgan's motion for attorney's fees because Lycurgan was the prevailing party and the Government advanced no substantial justification in refusing access to the search warrant. The district court's order denying Lycurgan's motion for attorney's fees under the Equal Access to Justice Act should accordingly be reveresed, and the case remanded for a computation of the fees and costs.

## VI.    CONCLUSION

For the reasons stated above, Appellant Lycurgan, Inc. respectfully requests that the Court reverse the district court's orders denying Lycurgan's (1) motion for attorney's fees; (2) motion for new trial or further action; and (3) motion to unseal search warrant documents.

Respectfully submitted,

THE MCMILLAN LAW FIRM, APC

/s/ Scott A. McMillan

Dated: July 13, 2015          _____

Scott A. McMillan
Michelle D. Volk
Attorneys for Appellant
Lycurgan, Inc.

## STATEMENT OF RELATED CASE

*Lycurgan, Inc. v. Todd Jones*, Case No. 15-55228.

The above case arises from a related case in the United States District Court, Southern District of California, Case No. 14-cv-1679.

Respectfully submitted,

Dated: July 13, 2015                    THE MCMILLAN LAW FIRM, A.P.C.


BY: /s/ Scott A. McMillan
       Scott A. McMillan
       Attorneys for Attorneys for Appellant
       Lycurgan, Inc.

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it this brief contains 12,061 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Corel Wordperfect in 14 point Times New Roman font.

Respectfully submitted,

Dated: July 13, 2015     THE MCMILLAN LAW FIRM, A.P.C.


BY: /s/ Scott A. McMillan
       Scott A. McMillan
       Attorneys for Appellant
       Lycurgan, Inc.

# CERTIFICATE OF SERVICE

When All Case Participants are Registered for the Appellate CM/ECF System:

I am employed in the country of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 4670 Nebo Drive, Suite 200, La Mesa, California 91941.

I, the undersigned, hereby certify that I electronically filed the foregoing with the Clerk of the Court of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 13, 2015:

1.     Appellant's Opening Brief

2.     Appellant Lycurgan Inc.'s Excerpts of Record [Three volumes].

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: July 13, 2015                    Signature:   /s/ Michelle D. Volk

                                         Michelle D. Volk