# UNITED STATES COURT OF APPEAL

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In the Matter of the Search of: | Case No. 14-56550 |
| Ares Armor, 206/208 N. Freeman St., Oceanside; Ares Armor, 416 National City Blvd.; Ares Armor Warehouse, 180 Roymar St. D; and 2420 Industry, Oceanside, CA. | U.S.D.C. Case No. 14-CV-1424 JLS (BGS) |
| In the Matter of the Search of: | |
| LYCURGAN, INC. d/b/a ARES ARMOR,<br>                    Petitioner,<br>        vs.<br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br>                    Respondent. | |

## APPELLANT'S REPLY BRIEF

Scott A. McMillan, SBN 212506
Michelle D. Volk, SBN 217151
**THE MCMILLAN LAW FIRM, APC**
4670 Nebo Dr., Suite 200
La Mesa, CA 91941-5230
Tel. 619-464-1500 x 14
Fax. 206-600-5095

Attorneys for Appellant/Petitioner,
Lycurgan, Inc.

# TABLE OF CONTENTS

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.  The District Court Erred in Denying Lycurgan's Motion to Unseal
        Search Warrant Documents as Moot. . . . . . . . . . . . . . . . . . . . . . . . . 4
        1. The redacted Search Warrant Affidavit is insufficient because
           portions remain sealed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2. The redacted names of the affiant agent and those other agents that
           "ginned up" the allegations in the warrant are Appellant
           Lycurgan's prospective Bivens defendants. . . . . . . . . . . . . . . 14
        3. The issues below are capable of repetition, yet evade review. . . . 16
           a.  There Is A Reasonable Expectation That Lycurgan Will Be
               Subject to Another Search And Seizure Based Upon A
               Sealed Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           b.  Properly, sealing of a Search Warrant Affidavit is to be
               limited in duration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           c. The Government has not made it absolutely clear that their
               wrongful conduct could not be expected to recur. . . . . 21
    B.  The District Court erred in denying Lycurgan's motion for new trial.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    C.  The District Court erred in denying Lycurgan's Motion for Attorneys
        Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        1.  The District Court erred in finding that Lycurgan was not the
            prevailing party because the Government ultimately provided
            Lycurgan a redacted search warrant following tentative ruling
            from the District Court which comprised a *judicial imprimitur*.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        2.  The District Court Erred In Finding That The Government's
            Refusal To Unseal The Search Warrant Was Substantially
            Justified. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
            a.  The District Court Erred in Relying On First Amendment
                Cases Cited By The Government. . . . . . . . . . . . . . . . . . 29

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

i

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**TABLE OF AUTHORITIES**

<u>United States Constitution</u>

U.S. Const. Amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Federal Decisional Authority</u>

*American Constitutional Party v. Munro*, 650 F.2d 184 (9th Cir. 1981) . . . . . . . 27

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989).. . . . . . . . . . . . . . . 11, 12

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

*Boyd v. United States*, 116 U.S. 616 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

*Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . 14

*Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . 23

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598  (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Carroll v. President & Comm'Rs of Princess Anne*, 393 U.S. 175 (1968) . . . 17, 18

*City News & Novelty v. City of Waukesha,* 531 U.S. 278 (2001) . . . . . . . . . . . . 22

*Coolidge v. N.H.*, 403 U.S. 443 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Davis v. FEC*, 554 U.S. 724 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Davis v. United States DOJ*, 610 F.3d 750 (D.C. Cir. 2010). . . . . . . . . . . . . . . . 27

*Dean v. Riser,* 240 F.3d 505 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*EEOC v. Fed. Express Corp.*, 558 F.3d 842 (9th Cir. 2009). . . . . . . . . . . . . . . . . 22

iii

*Foltz v. State Farm Mut. Auto Ins.*, 331 F.3d 1122 (9th Cir. 2003). . . . . . . . . . . . . 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*FTC v. Affordable Media, LLC,* 179 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . 21, 22

*Hale v. Henkel*, 201 U.S. 43 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hensley v. Eckerhart,* 461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re 14416 Coral Gables Way*, 946 F. Supp. 2d 414 (D. Md. 2011). . . . . . . 20, 28

*In re 14416 Coral Gables Way*, 946 F. Supp. 2d 414 (D. Md. 2011). . . . . 8, 10, 21

*In re Application of National Broadcasting Co.*, 653 F.2d 609 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re EyeCare Physicians of Am.*, 100 F.3d 514 (7th Cir. 1996) . . . . . . . . . . . 9, 10

*In re Search Warrants Issued August 29, 1994,* 889 F. Supp. 296 (S.D. Ohio 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 10, 11, 28

*In re Up North Plastics*, 940 F. Supp. 229 (D. Minn. 1996) . . . . . . . . . . . . . 11, 20

*Jianping Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 28

*Johansen on behalf of NLRB v. San Diego County Dist. Council of Carpenters of United Brotherhood of Carpenters & Joiners*, 745 F.2d 1289 (9th Cir. 1984). . . 17

*Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).. . . . . . 8, 9

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1174 (N.D. Cal. 2009) . . . . . 23

*Knox v. Serv. Employees Int'l Union*, 132 S. Ct. 2277 (2012). . . . . . . . . . . . . . . . 7

*Kolender v. Lawson*, 461 U.S. 352 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lockhart v. Leeds*, 195 U.S. 427 (1904). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Love v. Reilly,* 924 F.2d 1492  (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Maritime Mgmt, Inc. v. U.S.,* 242 F.3d 1326  (2001). . . . . . . . . . . . . . . . . . . . . . 25

*McQuiston v. Marsh,* 707 F.2d 1082 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . 27

*Montes v. Thornburgh,* 919 F.2d 531 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . 26

*Murphy v. Hunt*, 455 U.S. 478 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*National Wildlife Fed'n v. Federal Energy Regulatory Comm'n,* 870 F.2d 542 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Neal & Co. v. United States,* 121 F.3d 683 (Fed. Cir. 1997) . . . . . . . . . . . . . 24, 26

*Nixon v. Adm'r of General Servs.*, 433 U.S. 425 (1977). . . . . . . . . . . . . . . . . . . . 7

*Nixon v. Warner Communications*, 435 U.S. 589 (1978). . . . . . . . . . . . . . . . . . . . 8

*Offices of Lakeside Non-Ferrous Metals, Inc. v. United States*, 679 F.2d 778 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pierce v. Underwood,* 487 U.S. 552 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Sample v. Johnson*, 771 F.2d 1335 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . 17-19

*Scarborough v. Principi,* 541 U.S. 401 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Shea v. Gabriel*, 520 F.2d 879 (1st Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498 (2011) . . . . . . . . . . . . . . . 16

*Stanford v. Texas*, 379 U.S. 476 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Bus. of the Custer Battlefield Museum,* 658 F.3d 1188 (9th Cir.

2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 29

*United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). . . . . . . . . . . . . 6

*United States v. Hill*, 459 F.3d 966 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Leon*, 468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Mann*, 829 F.2d 849 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Real Property Known as 22249 Dolorosa St., Woodland Hills, Calif.* (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

*Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567  (4th Cir. 2004). . . . . . . . 28

*West Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wildlands CPR v. United States Forest Serv.*, 558 F. Supp. 2d 1096 (D. Mont. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27


Federal Statutes

18 U.S.C. 921(a)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 2412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 28

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


Federal Regulations

27 C.F.R. 478.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

Other Authorities

Steven G. Calabresi & Gary Lawson, *Symposium: The Legacy of the Federalist Papers, the Eleventh Annual National Federalist Society Symposium on Law and Public Policy - 1992*, 16 Harv. J.L. & Pub. Pol'y, Vol. 16, No. 1, Winter 1993. . . 6

*The Federalist No. 51*, at 321-22 (James Madison)(Clinton Rossiter ed., 1961).. . 6

# I.     INTRODUCTION

In order to bolster the basis for its agents' conduct, the Government still

attempts to falsely suggest Appellant distributed "firearms," despite the plain

language definition of a "receiver" at 27 CFR 478.11.  Yet, the Government filed

no charges against Lycurgan, abandoned forfeiture proceedings, and returned most

– but not all – of the items it obtained through a search warrant based upon the

subject false affidavit.

Specifically, Respondent states:

"Nevertheless, while an AR-15 lower receiver is regulated as a
"firearm," an unfinished lower receiver is not. As a result, certain
firearms manufacturers have begun producing partially completed
lower receivers, known colloquially as "80% lower receivers," or
"80% lowers," which are not fully completed.1 These parts, because
they may not be "readily converted" to a weapon, are not classified as
finished "firearms" by the ATF and can be sold the same as any other
unregulated part."

[Memo., p. 4-5.]

Thus, in one breath, acknowledging that an "unfinished receiver" is not

firearm, the Respondent continues throughout its brief to suggest that the

"unfinished receiver" / non-firearm is a *receiver*.   A receiver is not only defined[1],

_____

[1]The definition of "firearm frame or receiver" is found only at 27 CFR
478.11. The EP80 items, as sold, lacked such function or ability to "provide[]
housing for the hammer, bolt or breechblock and firing mechanism." 27 CFR
478.11.  As a matter of law, the EP80 item is not a "receiver."

1

but is regulated.  An item is that is a not a receiver is *not* regulated.  Yet, Respondent promiscuously bandies the word "receiver" throughout the brief in reference to the plastic items that are legally nothing more than a paperweight.[2]

The other fallacy propagated by the Respondents' brief is that "certain firearms manufacturers" are manufacturing unfinished receivers: Respondent invents this claim out of whole cloth.  There is nothing in the record that suggests this. [Id.]

In this case, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("the Government") made an unlawful search and seizure under the Fourth Amendment of the United States Constitution. They grounded this search in a sealed search warrant affidavit supported by the unilateral determination of the ATF that the parts sold by Appellant Lycurgan Inc. ("Lycurgan") constituted "firearms." The Government's responding brief lacks factual support and thus is replete with unsupported statements not located within the record on appeal.

While the Government arbitrarily decided to return most of Lycurgan's property and unsealed the warrant affidavit after being pressured by the district court, there is nothing preventing the Government from repeating their actions on

---

[2] The term "lower receiver" is not found in any statute or regulation. Congress excluded firearm component parts which do not satisfy the definition of a "receiver" from the Gun Control Act of 1968.

a search warrant identical in content and author. Lycurgan has continued

operating and the Government has alleged that there is an ongoing investigation

— which could lead to further unlawful sealed warrants. The Government admits

that there is still a controversy over the redactions, and thus the case is not moot.

Thus, the trial court erred in dismissing Lycurgan's case as moot.

It is transparent that the ATF simply believes that it can curtail a business

that Congress has deemed lawful, i.e., supplying parts to homebuilding gun

enthusiasts, through executing warrants that are based on no probable cause, and

sequestering the identity of those agents that would otherwise be liable for

damages – the only remedy available to an innocent victim of a wrongful search.

The Warrants Clause of the Fourth Amendment provides that warrants will

issue only on probable cause. The Court's sealing order defeats the protection of

the Warrants Clause as the agents may remain cloaked in anonymity after

conducting a search based on a false affidavit so long as there are no criminal

proceedings. So long as the agents names remain concealed, the remedy implied

in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S.

388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971) is illusory.

The Government does not challenge the lack of relevance of *United States*

*v. Bus. of the Custer Battlefield Museum,* 658 F.3d 1188 (9th Cir. 2011), the

3

primary case relied upon by the lower court in making its determination that no attorneys fees were available to Appellant under the Equal Access to Justice Act.

## II.   ARGUMENT

### A.  The District Court Erred in Denying Lycurgan's Motion to Unseal Search Warrant Documents as Moot.

The Government correctly states that this Court must review *de novo* the lower court's decision that the case was moot. The Government admits that there was a live case or controversy with regard to the redacted portions, and so the lower court's decision cannot survive de novo review. Resp. Brief p. 23 fn. 5.

The standard for review has not been determined for a court's decision that an unsealed, redacted document is constitutionally sufficient based solely on the brief of the opposing party. A person who has been searched and had property seized is – under the Constitution – "allowed to know whether the Fourth Amendment's mandate of probable cause, supported by oath or affirmation, has been satisfied." *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 301 (S.D. Ohio 1995). The violations of the Fourth Amendment justify strict scrutiny analysis of the Government's conduct.

The Court had already tentatively decided that the documents should be unsealed at the hearing, so Defendants produced an unsealed copy. See Tab 5, AER

041; Tab 2, AER 013. It was an abuse of discretion for the lower court to refuse to hear Lycurgan on this issue involving Lycurgan's fundamental rights. The court's decision that Lycurgan does not deserve release of the name of the agent affiant that procured the warrant on false information was in violation of the Fourth Amendment rights discussed in *In re Search Warrants Issued August 29* as analyzed under the strict scrutiny standard.

The open warrant process and due process are subverted by general warrants. "[T]hese general warrants for search and seizure of papers originated with the Star Chamber . . ." *Boyd v. United States*, 116 U.S. 616, 627 (1886). The Fourth Amendment was drafted to halt the common practice in "the colonies of issuing writs of assistance to the revenue officers, empowering them, in their discretion, to search suspected places for smuggled goods..." *Id.* at 625.

The goal of the Constitution's prescribed government structure, as discussed by the *Federalist Papers*, was to

> "giv[e] to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others. The provision for defense must in this, as in all other cases, be made commensurate to the danger of attack. Ambition must be made to counteract ambition. The interest of the man must be connected with the constitutional rights of the place. It may be a reflection on human nature, that such devices should be necessary to control the abuses of government."

Steven G. Calabresi & Gary Lawson, *Symposium: The Legacy of the Federalist Papers, the Eleventh Annual National Federalist Society Symposium on Law and Public Policy - 1992*, 16 Harv. J.L. & Pub. Pol'y, Vol. 16, No. 1, Winter 1993, citing *The Federalist No. 51*, at 321-22 (James Madison)(Clinton Rossiter ed., 1961).

The Fourth Amendment to the United States Constitution protects the rights of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects corporations as well. *Hale v. Henkel*, 201 U.S. 43 (1906). The Fourth Amendment's Warrants Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. In drafting the Warrants Clause, "the overarching purpose is to ensure that 'those searches deemed necessary should be as limited as possible.'" *Coolidge v. N.H.*, 403 U.S. 443, 467 (1971).

"To achieve its goal, the Warrants Clause requires particularity and forbids overbreadth." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009), citing *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). "[Supreme Court] cases uniformly hold that the Fourth Amendment prohibition against a general search requires that warrants contain descriptions reflecting 'the most scrupulous

exactitude…'" *Nixon v. Adm'r of General Servs.*, 433 U.S. 425, 531 (1977), citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965).

Here, the warrant served on Lycurgan was so broad as to allow the seizure of all of its papers, computer files and inventory unrelated to the EP80 items. Tab 49, AER 366, ¶ 9; Tab 34, AER 249-78. Lycurgan has a claim based on the unsealed warrant but it conceals the liable party's identity. Tab 34, AER 249-78.

### 1. The redacted Search Warrant Affidavit is insufficient because portions remain sealed.

"A case is not moot 'as long as the parties have a concrete interest, however small, in the outcome of the litigation.'" *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1112 (2012), quoting *Knox v. Serv. Employees Int'l Union*, 132 S. Ct. 2277, 2287 (2012). The Government admits that "Lycurgan's motion is not moot as to one narrow issue," and so "there is still a live controversy with respect to the redaction of the agents' names." Resp. Brief p. 23 fn. 5. Thus, both parties agree that the court's ruling that Lycurgan's motion was moot was clearly erroneous .

While the trial court has discretion in determining whether a warrant can be sealed, their discretion is limited to doing so "in appropriate circumstances." *United States v. Mann*, 829 F.2d 849, 853 (1987). The determination of whether a redaction is sufficient is based on balancing the interests of the party seeking the information

with the negative affect that the release of information could have on an ongoing criminal investigation. *See Nixon v. Warner Communications*, 435 U.S. 589, 602 (1978); *In re 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 428 (D. Md. 2011); *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 591; *In re Application of National Broadcasting Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981). Where only one party has not been given a chance to argue their interests, there can be no meaningful balancing.

The Government's questionable restatement of the lower court's finding does not reflect the facts set forth by the record. The Government's brief states: "the court made a factual finding that the 'names of agents, judges, and others involved with the case' had already appeared on websites immediately after the initial search." Resp. Brief p. 20, citing to AER 004. In reality, the judgement states that "*Respondent further contends* that . . . the listing of the names of agents, judges, and others involved with the case [appeared] on websites." Tab 1, AER 004, citing to Gov't Oppo. to New Trial Mtn. (emphasis added). There is likewise no indication that a balancing of interests was even attempted. Resp. Brief p. 20; Tab 1, AER 004.

"The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City & Cnty. Of Honolulu*, 447

F.3d 1172, 1179 (9th Cir. 2006). Contrary to the Government's argument, the lower court made no "specific factual findings." Tab 4, AER 019. *Kamakana*, 447 F.3d 1172, 1179, citing *Foltz v. State Farm Mut. Auto Ins.*, 331 F.3d 1122, 1136 (9th Cir. 2003). The sole analysis on this issue stated: "The Court finds the redactions appropriate to protect the safety and privacy of the ATF agents, and the redactions do not appear to compromise the informational value of the affidavit to Petitioner." Tab 4, AER 019. Lycurgan does not seek addresses or other private information concerning the government agents, merely their names. *Cf. Kamakana*, 447 F.3d 1172, 1182.

The Government does not contend that Lycurgan was sufficiently heard on this issue nor that they were not entitled to be heard. Without giving Lycurgan an opportunity to be heard, there was no way to properly balance the supplemental briefs provided by the government against the interests of Lycurgan. This practice is especially unfair in light of the Governments propensity to alter the facts in their favor.

This nation's history of limiting the governments' right to seize property and evade accountability weigh in favor of using the analysis of the district courts sitting in the Fourth, Sixth, and Eighth Appellate districts over that of the Seventh. In the Government's only Fourth Amendment case, the *In re EyeCare Physicians of Am.*,

100 F.3d 514 (7th Cir. 1996) court provides conclusory analysis without authority for their Constitutional rulings. By their own analysis, their decision should be ignored on this basis alone. More importantly, the court interprets the Fourth Amendment in a contradictory manner to the intent of the Framers, permitting overbreadth and hindering the ability of the government to self-regulate through use of the judicial system. It is also distinguishable from the present case in that the court determined that there was no harm to the moving party as a preliminary matter. *Id*. This was germane to the court's analysis on the Fourth Amendment issue. *Id*.

The Government agrees that the majority of cases it relied upon in the lower court proceedings concern the First Amendment rights of the public and media, and not the Fourth Amendment rights of the search warrant's target. Resp. Brief 14-15; Tab 2-3, AER 015-018.

On the other hand, *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296 (S.D. Ohio 1995) provides thorough analysis on the Fourth Amendment's application to the judicial determination of whether a document should be sealed. The court reasonably found that though qualified, a movant does have the "right to inspect the affidavit which was the foundation for the warrant used to search their residence and place of business." *Id*. at 300; accord *In re Search Warrants Issued on April 26, 2004*, (2004) 353 F. Supp. 2d 584. *In re 14416 Coral Gables Way*, (2011) 946 F.

Supp. 2d 414, 428 followed this analysis as well.

The court in *In re Up North Plastics*, (1996) 940 F. Supp. 229 agreed with the *In re Search Warrants Issued August 29, 1994* ruling, adding that to determine whether the Government has sufficient compelling interest, "[t]he factors considered by the court in Shea may be relevant: (1) the government's interest in secrecy to protect an ongoing investigation; (2) whether a prima facie showing of probable cause has been made; (3) whether the movant may reassert the claim, should the government's delay become unreasonable; and (4) the movant's entitlement to lawful possession of the items." *Id*. citing *Shea v. Gabriel*, 520 F.2d 879 (1st Cir. 1975). Here, these factors weigh heavily in favor of unsealing the entire document, including affiants' names.

*Goetz*, cited by the Government, holds that "[b]ecause the magistrate and the district court did not follow acceptable procedures, the judgment of the district court sustaining the magistrate's sealing of the affidavit [should be] vacated." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 66 (4th Cir. 1989). "To make findings and conclusions specific enough for appellate review, the district court must examine the affidavit when considering a magistrate's order." *Id*. When ruling on whether the affidavit was properly sealed, "conclusory assertions are insufficient to allow review; specificity is required." *Id*.

Additionally, "[i]f someone desires to inspect the papers, an opportunity must be afforded to voice objections to the denial of access." *Goetz*, 886 F.2d 60, 65. These holdings are procedural, not specific to the constitutional grounds substantively disputed, and so are as relevant to Fourth Amendment claims as to the First Amendment claims analyzed by the *Goetz* court.

An ATF agent's reliance on a duly issued warrant "must be objectively reasonable," and will not protect an agent when "the issuing magistrate has been knowingly mislead." *United States v. Leon*, 468 U.S. 897, 922-23 (1984). The affiant ATF agents obtained the warrant by duplicitously recasting section 921 of Title 18 as prohibiting sale of an item which is arguably "readily convertible" to an AR-15 "lower receiver." Through the misrepresentation, the affiant and his or her cohorts were able to gain access to Lycurgan's premises and data. Tab 5, AER 029. No criminal or forfeiture proceeding was held, so Lycurgan could not formally challenge the warrant or the probable cause showing through a *Franks* hearing. Tab 5, AER 037-38; Tab 25, AER 176.

"There is no reason for denying his right to relief, if the plaintiff is otherwise entitled to it, simply because it is asked under the prayer for general relief and upon a somewhat different theory from that which is advanced under one of the special prayers." *Lockhart v. Leeds*, 195 U.S. 427, 436 (1904); see also *Cooper v. United*

*States*, 220 F. 867 (1915). Lycurgan requested that the documents be "immediately disclosed in their entirety" or "disclose a limited redacted version of the search warrant documents." Tab 47, AER 356. The released redacted version did not provide sufficient information to achieve the overarching goal of Lycurgan – to ensure they were treated fairly – and thus Lycurgan requested an unredacted copy to pursue its fair remedy against the Government. Tab 26, AER 187.

The Court found that "the redactions do not appear to compromise the informational value of the affidavit to Petitioner." Tab 4, AER 020. This determination was made without a hearing and without permitting Lycurgan to submit a supplemental brief explaining to the Court why the informational value was in fact compromised by the material redactions. Without knowing the affiants' names, Plaintiffs cannot seek relief in their *Bivens* action which currently names unknown defendants.[3]

2. **The redacted names of the affiant agent and those other**

---

[3]

Additionally, when a document is permitted to remain under seal, the Government has the obligation to conduct its investigation with diligence, for under any other interpretation the Government, having all of its evidence under seal, might be inclined to delay proceedings, rather than to expedite them." *Offices of Lakeside Non-Ferrous Metals, Inc. v. United States*, 679 F.2d 778, 779-80 (9th Cir. 1982). The court "should exercise its continuing jurisdiction to ensure that the Government's investigation proceeds with diligence and to protect the rights of, which become more critical with the passage of time." *Id*. at 780. The names of the agents have still not been released.

**agents that "ginned up" the allegations in the warrant are Appellant Lycurgan's prospective Bivens defendants.**

It is necessary for Lycurgan to know the affidavit's author so that it can pursue its *Bivens* action arising from the Fourth Amendment violation.

The ATF agent who executed the affidavit before the magistrate misstated both fact and law in order to obtain a criminal search warrant against Lycurgan. Tab 34, AER 253, 258; 27 CFR 478.11. Those false statements violated Lycurgan's rights under the Fourth Amendment, precipitating a Bivens action against the affiant and the other agents. *See, e.g., Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). Judicial deception is a recognized basis for a *Bivens* action. *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991).

As a result, Lycurgan has a great need for the information. Unlike the Government's case, *In re Search of 1638 E. 2nd St.*, 993 F.2d 773, 775 (10th Cir. 1993), this need was not satisfied by production of the redacted version.

The "description" of the law within the affidavit is false. Tab 34, AER 253; 27 CFR 478.11. The agents combined two separate statutory components resulting in a false definition which mislead the issuing magistrate. The trial court's determination that the Magistrate judge's approval to seal documents operates as a sufficient check

on the ATF's behavior is unfounded. The evidence shows that the ATF deceitfully presented its legal and factual basis for the warrant in such a way that the Magistrate judge could not properly determine probable cause. This misconduct is the grounds for Lycurgan's *Bivens* action, which is pending awaiting identification of the named defendants.

Indeed, the Government concedes that they perverted the statute in order to obtain the warrant. The affiant ATF agent falsely stated that, "A "receiver" under 18 U.S.C. §921(a)(3)(B) includes a "lower receiver," [Tab 34, AER 253], and that, "…the receiver and plug being are [sic] formed in such a way that they are not adhered to each other," Tab 34, AER 258. As such, the plug can be removed and the firearm can readily be placed into a firing condition." Tab 34, AER 258.

In addition, the affiant misstated the law to the Magistrate. Paragraph 19 of the Affidavit states, "indexing of the fire-control-cavity ... constitutes the making of a firearm frame or receiver as defined by 18 U.S.C. 921(a)(3)(A)." Tab 34, AER 258. The definition of "firearm frame or receiver" is found only at 27 CFR 478.11. The EP80 items, as sold, lacked such function or ability to "provide[] housing for the hammer, bolt or breechblock and firing mechanism." 27 CFR 478.11. Even if milled out, the EP80 item could only house the hammer and firing mechanism.

The unknown affiants' false statements to the Magistrate caused the seizure of

Lycurgan's data, customer lists, EP80 items, and "Rudius" 1911 handgun kits. Tab 49, AER 366, ¶ 9; Tab 34, AER 249-78. Once defendants' identities are revealed, Lycurgan's can effect service in its cogent *Bivens* action.

The Government refuses to identify the affiant agent or his or her colleagues that are referenced in the affidavit. Thus, the issue is not "moot." Lycurgan has alleged that the search and seizure was not proper, "it is now incumbent upon the defendants to show the law by which this seizure is warranted. If that cannot be done, it is a trespass." *Boyd v. United States*, 116 U.S. 616, 627 (1886).

### 3. The issues below are capable of repetition, yet evade review.

A case is not moot if the issue is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC* (2011) 219 U.S. 498, 515. "That exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Davis v. FEC*, 554 U.S. 724, 735 (2008), internal quotations omitted.

### a. There Is A Reasonable Expectation That Lycurgan Will Be Subject to Another Search And Seizure Based Upon A Sealed Affidavit.

The Government is correct that the likelihood of a reoccurrence must merely

be "calculable," but case precedent has not determined "what degree of probability is required where a plaintiff can show a likely recurrence of injury." *Sample v. Johnson*, 771 F.2d 1335, 1343 (9th Cir. 1985).

*Kolender v. Lawson*, 461 U.S. 352 (1983) and *Murphy v. Hunt*, 455 U.S. 478 (1982) demonstrate the two factual extremes. In *Kolender*, petitioner had already been subject to the illegal conduct 15 times so it was nearly certain to occur again. *Kolender*, supra, fn. 3. In *Murphy*, on the other hand, the court could not reasonably assume that he would again be subject to the illegal conduct resulting from a conviction for sexual assault. *Murphy*, supra, at 483. The court also was in no place to determine the probability that the prior convictions would be overturned on appeal. *Id*. Later cases have further refined the criteria for "capable of repetition."

In *Johansen on behalf of NLRB v. San Diego County Dist. Council of Carpenters of United Brotherhood of Carpenters & Joiners*, 745 F.2d 1289 (9th Cir. 1984), the court found "a reasonable expectation that the same complaining party would be subjected to the same action again" where there were ongoing disputes between the two parties and the defendant's wrongful conduct was standard practice, like here. *Johansen*, 745 F.2d 1289.

The *Carroll* court found a live controversy in a case similar to Lycurgan's. Petitioners held a rally, set to be continued the following day. *Carroll v. President &*

*Comm'Rs of Princess Anne*, 393 U.S. 175, 176 (1968). The city and county obtained a restraining order and subsequently a 10-day injunction against the continuance of the rally, which petitioners claim violated their free speech rights. *Id*. at 177. The court found that since the incident occurred, "petitioners have sought to continue their activities, including the holding of rallies . . ." *Id*. The respondents continued to follow the questioned procedure. *Id*. Therefore, the case was not moot. *Id*.

The Government correctly points out that the exception only considers likelihood that it will happen to Lycurgan, and not other businesses. *Sample*, 771 F.2d at 1339. Here, the Government has indicated that there is a continuing investigation. Tab 5, AER 038. Lycurgan has remaining EP80 80% unfinished lower receivers – as they legally did prior to the initial raid – so there is a reasonable expectation that the Government will search Lycurgan again. The definition of probable cause has not changed and neither has Lycurgan's business. Lycurgan's conduct is not illegal, and so there have been no convictions. Tab 5, AER 083. The Government has made it clear that they will continue to seal and redact their warrants, even from the warrant target. Therefore, Lycurgan has a reasonable expectation of again being raided in reliance on a sealed warrant. This practice of sealing and redacting of warrant affidavits ensures that Lycurgan will not be able to substantively challenge the warrant in a *Bivens* action.

In *Sample*, there was no evidence that the very specific circumstances leading to petitioner's harm would ever happen again. *Sample*, 771 F.2d 1335, 1339. His extremely general allegation that he "had returned to work in a hazardous occupation" failed to demonstrate: (1) he would again be injured at work; (2) if he was, the new employer would again convert his claim; and (3) if they did, it would again leave him without compensation for ten months. *Id*. The tenuous connections established by the petitioners there were unsubstantiated by facts in a way not at all comparable to this case.

*West Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701 (9th Cir. 2011) ("*WCSP*") presented circumstances where the underlying litigation would not necessarily evade review because it is guided by the same time limitations and delays and not "inherently limited in duration." *Id*. at 705. Additionally, the petitioner had many prior opportunities to engage in the relevant conduct and chose not to, negating claims that they were likely to do it again. *Id*. at 704-05.

Here, the trial court's ruling validates the Government's practice of withholding information from the target of a search warrant that would allow the target to hold the Government accountable for improperly obtained warrants. Tab 4, AER 020. The Government has alleged that there is an ongoing investigation, and

Lycurgan's continued business activities that led to the search makes it very likely that the Government will raid Lycurgan again. Tab 5, AER 038. The trial court's determination ensures that the Government will continue to illegally withhold information which necessarily prevents *Bivens* suits against its employees.

Further, a ruling on this issue whether a search target has a pre-indictment right to inspect the search warrant affidavit is particularly valuable due to the uncertainty in this area of the law. The law is unsettled on this issue, and the sparse case precedent is conflicting. Tab 5, AER 022-23, 029-030. Both sides have fully briefed this issue and argued before this Court. The Court's ruling on this issue will prevent Lycurgan from having to re-litigate this matter and will offer much needed legal precedent in an unsettled area of the law. Accordingly, the district court's order denying as moot Lycurgan's motion to unseal search warrant documents and subsequent motion for new trial should be reversed.

**b. Properly, sealing of a Search Warrant Affidavit is to be limited in duration.**

The sealing of a search warrant affidavit is inherently limited in duration because "the time period to continue the sealing must be both reasonable and definite." *In re Search of Up North Plastics, Inc*., 940 F.Supp. 229, 233 (D. Minn. 1996); *In re 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 419-20 (D. Md. 2011).

A search warrant affidavit may be sealed longer, but only for a "reasonable period of time," likely under one year. *In re 14416 Coral Gables Way*, 946 F. Supp. 2d at 419-20; *In re Matter of the Search of a Residence,* 121 F.R.D. at 80.

The Government does not dispute that the sealing is limited in duration and thus capable of continuously evading review.

**c. The Government has not made it absolutely clear that their wrongful conduct could not be expected to recur.**

The Government was correct that Lycurgan's analysis of the two exceptions was somewhat combined, because the facts and circumstances warranting each exception are, in this case, nearly identical. It also correctly points out that it has the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). It did not meet that burden. The Government's burden is further enhanced because it is the alleged wrongdoer in this matter. See *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1237 (9th Cir. 1999).

While the "voluntary cessation" doctrine may be typically used to challenge rules, it has other applications. It is evident from the Government's arguments that it maintains a policy of withholding information from the target of a search for an

indeterminate period of time.

The issue is not whether the same warrant will again be sealed, but whether the Government will again refuse to provide necessary information to the target of a search warrant. *See EEOC v. Fed. Express Corp.*, 558 F.3d 842, 847-848 (9th Cir. 2009). The Government is unable to show that "it is absolutely clear" that they will not. *Friends of the Earth, Inc.*, 528 U.S. 167, p. 190.

In *EEOC,* 558 F.3d 842, a subpoena was issued against FedEx and subsequently appealed. Seeking to dismiss the appeal for mootness, FedEx argues that it had complied with the subpoena by providing the documents to EEOC in response to another subpoena. The court held that issue was not moot because "FedEx has given no assurance that it will not challenge *another* administrative subpoena stemming from the Merritt charge ..." *Id*. at 848 (emphasis added). Thus the Government's contention that this issue regards only "the unsealing of *this* affidavit, at some future date" is unfounded. Resp. Brief p. 31 (emphasis in original).

Lycurgan still operates a business that the ATF considers unlawful. Tab 49, AER 365, 368. *Contra City News & Novelty v. City of Waukesha,* 531 U.S. 278, 284 (2001). Therefore, the ATF is "free to return to its illegal action at any time" in raiding Lycurgan and denying Lycurgan's Fourth Amendment right to inspect the search warrant affidavit. *FTC,* 179 F.3d at 1237. It is not "absolutely clear" that the

Government will not conduct a similar search and seizure under seal, and the Government fails to meet their burden. *Id.* (omitting citations). The Government alleges no facts or law that would prevent it from repeating their conduct.

The Government will likely raid Lycurgan again in light of Lycurgan's continued operation and the Government's strained interpretations of federal firearm laws. Further, in light of the reasons advanced by the Government in sealing its search warrant affidavits, the Government is likely to resume their policy of sealing and redacting information. The Government finally disclosed the affidavit to Lycurgan only after the Court ordered the Government to substantiate its continued sealing of the affidavit. Tab 34, AER 249-78; see also Tab 51, AER 461-62, Doc. No. 12. Until then, the Government vigorously fought to keep the affidavit under seal despite a lack of compelling interest.

### B. The District Court erred in denying Lycurgan's motion for new trial.

A district court "may grant a new trial or amend its judgment after a court-tried action for three reasons: (1) manifest error of law; (2) manifest error of fact; and (3) newly-discovered evidence." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1174 (N.D. Cal. 2009), citing *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). As discussed above, there was "a manifest error of law" and "of fact" warranting a new

trial. Lycurgan was not permitted to brief or argue in favor of removing the redactions allowed to remain in violation of Lycurgan's Fourth Amendment rights.

The Government does not argue that Lycurgan should not be permitted a new trial that would allow it an opportunity to be heard. The manifest error in application of the law and manifest error in fact resulting from the gross imbalance in information provided to the lower court warrants a new trial.

### C. The District Court erred in denying Lycurgan's Motion for Attorneys Fees.

Under the Equal Access to Justice Act ("EAJA"), a prevailing party in a civil action by or against the United States may be entitled to costs. 28 U.S.C. § 2412(a).[4] Section 2412(b) makes the United States liable for fees and costs "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." *Scarborough v. Principi*, 541 U.S. 401, 407 (2004), quoting § 2412(b). While an award of costs under section 2412(a) is discretionary, "[a]ttorney fees and expenses *must* be awarded when the Government's position is not 'substantially justified.'" *Neal & Co. v. United States,* 121 F.3d 683, 686, (Fed. Cir. 1997) emphasis in original, quoting section

---

[4]The Government is correct that the EAJA applies for fees incurred only in the civil cases, like the instant civil case against the Government. The warrant this case concerns did not result in a criminal case. The Government's confusion is unfounded. Resp. Brief p.34, fn 6.

2412(d)(1)(A)]; *Maritime Mgmt, Inc. v. United States,* 242 F.3d 1326, 1332 (2001).

The lower court denied attorney's fees to Lycurgan based on the incorrect finding that Lycurgan was not the "prevailing party," and that the Government was "substantially justified." Tab 2, AER 014, 016.

**1. The District Court erred in finding that Lycurgan was not the prevailing party because the Government ultimately provided Lycurgan a redacted search warrant following tentative ruling from the District Court which comprised a *judicial imprimitur.***

Claimants are "prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *National Wildlife Fed'n v. Federal Energy Regulatory Comm'n,* 870 F.2d 542, 544 (9th Cir. 1989) quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (internal quotation marks omitted).

The Government indicated at the hearing that it was not willing to produce the unsealed Affidavit until at least 90-120 days out. Tab 5, AER 046. The trial judge stated that he was "going to take this matter under submission" to allow further time to re-read the authority and for the Government to submit a supplemental brief. Tab 5, AER 32-33, 55. After fully litigating this matter, and receiving comments from the District Court, the Government disclosed the affidavit, while redacting only the names of the investigating agents involved. See Tab 34, AER 249-78; see also Tab

51, AER 461-62, Doc. No. 12. Thus, Lycurgan achieved its principal goal, which the Government vigorously opposed up to and through briefing and oral argument. See *supra*. Lycurgan is the prevailing party despite the redaction of the ATF agents' names. *Neal & Co*, 121 F.3d at 685 ["[A] party may prevail without winning a complete victory or fully recovering its requested damages."].

Controlling Ninth Circuit precedent dictates that prevailing party status is preserved if the case becomes moot after the party achieves its objective. *Montes v. Thornburgh,* 919 F.2d 531, 538 (9th Cir. 1990). Here, the district court ruled the instant case is moot only because Lycurgan achieved its objective in unsealing the affidavit. *Montes* therefore dictates that the "mootness" issue does not affect Lycurgan's status as the "prevailing party." *Montes*, 919 F.2d at 538.

The lower court agreed that "[the Government] knew that its initial explanation for keeping the affidavit sealed did not satisfy the Court," and took the matter under review only to give the Government a second chance via a supplemental briefing. Tab 2, AER 014. Thereafter the Government unsealed the majority of the affidavit, knowing it could not support its position with supplemental briefing and could not prevail. See Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063; cf. *Dean v. Riser* (5th Cir. 2001) 240 F.3d 505, 511. The Government supports its contentions only with facts not located in the record. See Resp. Brief p. 39. The subsequent ruling

against Lycurgan was on a different question – the sufficiency of the Affidavit in its redacted form – and does not affect Lycurgan's status as a prevailing party with regard to the successful overarching claim to unseal the Affidavit. Tab 1, AER 001-007.

The Government correctly states that Lycurgan only needs to establish a "clear causal relationship between the litigation brought and the practical outcome realized," *American Constitutional Party v. Munro*, 650 F.2d 184, 188 (9th Cir. 1981) and that the suit was a "catalyst that prompted the opposing party to take action," *McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir. 1983).

The Government mistakenly relies on the decision in *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001), which has been superceded by statute as stated in *Davis v. United States DOJ*, (2010) 610 F.3d 750, 752 and *Wildlands CPR v. United States Forest Serv*., (2008) 558 F. Supp. 2d 1096, 1098. *Buckhannon* is also factually distinguishable. Fees were denied under the ADA and FHAA because the mere filing of the litigation caused the change, rather than a legal change in the parties' relationship. *Buckhannon*, 532 U.S. 598, 610. Here, the district court's tentative ruling prodded the Government to release a redacted version of the affidavit. Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063. The comments by the district court even satisfy the more stringent standard set

forth in *Buckhannon*. See, *Jianping Li v. Keisler*, 505 F.3d 913, 918 (9th Cir. 2007).

**2. The District Court Erred In Finding That The Government's Refusal To Unseal The Search Warrant Was Substantially Justified.**

The Government had the burden of showing "substantial justification" to defeat a section 2412(d) prevailing party fee award. *Love v. Reilly,* 924 F.2d 1492, 1494 (9th Cir. 1991); *22249 Dolorosa St.*, 190 F.3d at 983-84. The Government "must demonstrate that its position had 'a reasonable basis both in law and fact.'" *22249 Dolorosa St.*, 190 F.3d at 983-84, quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1987).

The government was unable to show it had substantial justification in refusing to unseal the warrant, and likewise lacked justification for refusing to unredact the warrant. See Tab 5, AER 040-041, 043, 045, 050, 055-058, 061, 063. The mere existence of an ongoing investigation is not probative. See *In re 14416 Coral Gables Way,* 946 F. Supp. 2d 414, 420-21 (D. Md. 2011); *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 301 (S.D. Ohio 1995); *Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 573 (4th Cir. 2004). Instead, the relevant consideration is whether unsealing the Affidavit would compromise the investigation or create a threat of officer safety. *Id*. The Government declined to address this issue, despite having many opportunities to do so.

28

The Government admits that the majority of its authority does not concern the Fourth Amendment rights of the target of a search warrant, and so is not relevant. Resp. Brief p. 14-15.

The judge did not find substantial justification in the motion and opposition submitted to the lower court. Tab 2, AER 14. The lower court pointed out the irrelevant First Amendment authority and lack of justification for keeping information withheld. Tab 5, AER 038. It was only after a secondary brief opportunity – provided only to the Government – that the trial court decided to let the redactions remain. Tab 1, AER 001-007. The finding that the redacted warrant was justified was based merely on an alleged "public reaction to the search and the listing of the names of agents, judges, and others involved with this case on public websites." Tab 1, AER 004.

    a.   **The District Court Erred in Relying On First Amendment Cases Cited By The Government.**

*Custer Battlefield Museum,* 658 F.3d 1188, has no place in the present proceedings. In *Custer Battlefield Museum*, unlike in this case, the government did ***not*** oppose the search target's access to the search warrant affidavit. *Id*. at p. 1191. Further, the *Custer Battlefield Museum* court held that the search target, and possibly the public as well, were entitled to review the search warrant affidavit. *Id*. at 1196.

The Government does not dispute the inapplicability of *Custer*, and thus both parties agree that the lower court's decision was in error.

## III. CONCLUSION

Appellant Lycurgan, Inc. respectfully requests that the Court reverse the district court's orders denying Lycurgan's (1) motion for attorney's fees; (2) motion for new trial or further action; and (3) motion to unseal search warrant documents.

Respectfully submitted,
THE MCMILLAN LAW FIRM, APC

Dated: January 25, 2016

/s/ Scott A. McMillan
_____

Scott A. McMillan
Michelle D. Volk
Attorneys for Appellant
Lycurgan, Inc.

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it this brief contains 6,983 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Corel Wordperfect in 14 point Times New Roman font.

Respectfully submitted,

Dated: January 25, 2016        THE MCMILLAN LAW FIRM, A.P.C.


BY: /s/ Scott A. McMillan
       Scott A. McMillan
       Attorneys for Appellant
       Lycurgan, Inc.

16 Harv. J.L. & Pub. Pol'y 1

**Harvard Journal of Law & Public Policy**
Winter, 1993

Symposium the Legacy of the Federalist Papers the Eleventh Annual
National Federalist Society Symposium on Law and Public Policy--1992

FOREWORD: TWO VISIONS OF THE NATURE OF MAN

Steven G. Calabresi [a1]  Gary Lawson [aa1]

Copyright © 1993 by the Harvard Society for Law & Public Policy, Inc.; Steven G. Calabresi, Gary Lawson

This year, for the first time in its ten-year history, The Federalist Society convened in a world no longer haunted by the specter of a global communist empire. Seventy-four years after its creation, Lenin's Union of Soviet Socialist Republics had shattered into many fragments; more importantly, his political philosophy had taken its well-deserved place on the "ash heap of history."

This happy development makes all the more striking the continued smooth functioning, after more than 200 years, of the American constitutional order-- the world's oldest constitutional political system. Our Eighteenth-Century federalist Constitution has survived the totalitarian menaces of Naziism and communism and has fostered the creation of the freest and wealthiest nation in human history. The extended commercial republic of which Publius wrote in *The Federalist Papers* now reaches from sea to shining sea and supports a population eighty times larger than during the Founding era. Areas that were wilderness in Publius's time now teem with cities, factories, universities, churches, highways, airports, and other indicia of advanced civilization.

In Russia, however, the last 200 years have seen a very different kind of progress. Although Russia has more land and natural resources at its disposal than does the United States, the people of Russia today live in an impoverished land that is sometimes on the brink of starvation. During this century, millions have died at the hands of a genocidal government and many more have been tortured or condemned to spend years in prison. Even today, the forces of Russian democracy stand on the verge of being overwhelmed by backward-looking demagogues.

Why this difference? Why is civilization thriving on America's shores, but tottering in Russia? The answer lies largely in our Federalist ancestors' keen perception of human nature. Although our Constitution does not specifically discuss the nature **\*2** of Man, an identifiable conception of human nature infuses the document. That conception enabled the Framers to write a Constitution that brilliantly balances the competing demands of order and freedom and that has fostered the generation of wealth on a scale unprecedented in human history. By the same token, the failure of communism is largely a failure of the communist view of the nature of Man.

Communism is centrally concerned with creating a New Communist Man. The communist system is predicated on the belief that Man is inherently sociable and other-regarding and that these traits can be perfected so that an earthly Utopia is sustainable. One need only evolve beyond the material conditions of production represented by capitalist private property. The communist theology of human nature is thus, in some ways, horribly optimistic: eliminate private property in the means of production and we will all inherit the Garden of Eden. The State, and indeed law itself, will wither away.

James Madison was more guarded in his view of human nature. He too believed that a central problem facing any constitution writer stemmed from narrow, self-regarding human behavior--a belief that was clearly reflected in his discussion of the "violence

of faction."[1] Madison decried the "instability, injustice, and confusion [thus] introduced into the public councils"[2] and concluded that they have "in truth, been the mortal diseases under which popular governments have everywhere perished."[3] He observed that there are "two methods of curing the mischiefs of faction: the one, by removing its causes; the other, by curing its effects."[4] And he further noted that there are two methods of pursuing the strategy of seeking to remove the causes of faction: "the one, by destroying the liberty which is essential to its existence; the other, by giving to every citizen the same opinions, the same passions, and the same interests."[5]

For 74 years, the Communists tried both strategies for removing the causes of faction, only to learn, as Madison had warned more than a century earlier, that "[i]t could never be more truly said than of the first remedy that it was worse than **3** the disease"[6] and that "[t]he second expedient is as impracticable as the first would be unwise."[7] The basic problem, which Madison understood, is that

[t]he latent causes of faction are ... sown in the nature of man; and we see them everywhere brought into different degrees of activity, according to the different circumstances of civil society. A zeal for different opinions concerning religion, concerning government, and many other points, as well of speculation as of practice; an attachment to different leaders ambitiously contending for preeminence and power; or to persons of other descriptions whose fortunes have been interesting to the human passions, have, in turn, divided mankind into parties, inflamed them with mutual animosity, and rendered them much more disposed to vex and oppress each other than to co-operate for their common good .... [T]he most common and durable source of factions has been the verious and unequal distribution of property. Those who hold and those who are without property have ever formed distinct interests in society. Those who are creditors, and those who are debtors, fall under a like discrimination. A landed interest, a manufacturing interest, a mercantile interest, a moneyed interest, with many lesser interests, grow up of necessity in civilized nations, and divide them into different classes, actuated by different sentiments and views. The regulation of these various and interfering interests forms the principal task of modern legislation and involves the spirit of party and faction in the necessary and ordinary operations of government.[8]

From his conclusion that the causes of faction were sown in the nature of man, Madison deduced that the only solution to the problem of faction was to regulate the *effects* of faction. The ambition, energy, and narrow selfishness of men must be channeled so that, almost despite themselves, men are led as if by an invisible hand to produce good consequences rather than bad ones.[9] The political vehicle for this task is the extended commercial republic.

Madison's and Marx's visions of human nature thus differ sharply.[10] Both identify human shortsightedness and narrow **4** self-regardingness as problems for political governance. One view, however, seeks to create conditions that will change this human nature, while the other takes human nature as a given and seeks to design a political system that, like the free market economy, harnesses ambition and faction to produce good results.

These conflicting visions of human nature are reflected in the organizing constituting documents of the two societies, and particularly in those documents' guiding conceptions of government leaders. The preamble to the 1977 Constitution of the U.S.S.R. grandly explained that the Soviet government had "carried through far-reaching social and economic transformations, and put an end once and for all to exploitation of man by man, antagonisms between classes, and strife between nationalities."[11] Article 6 then proclaimed that "[t]he leading and guiding force of Soviet society ... is the Communist Party of the Soviet Union."[12] This article, under which the Party was entrusted with total power over all aspects of government, and indeed of society generally,[13] appeared in the Constitution ahead of almost everything else, including provisions on individual rights and government structure. It is no surprise, then, that repeal of Article 6 and similar provisions in Eastern European constitutions was the first demand of democratic reformers in all of the countries emerging from the shadow of communism.

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Our own Constitution does not as explicitly adopt a theory of human nature, but the Madisonian theory of Man is implicit in our whole system of checks and balances, separation of powers, and federalism. Madison viewed government leaders the same way he viewed men generally. Because "[e]nlightened states-men will not always be at the helm," [14] Madison concluded that it would be necessary to "so contriv[e] the interior structure of the government as that its several constituent parts may, by their mutual relations, be the means of keeping each other in **\*5** their proper places." [15] The goal, expressed in possibly the most famous passage in *The Federalist Papers*, was to

giv[e] to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others .... Ambition must be made to counteract ambition. The interest of the man must be connected with the constitutional rights of the place. *It may be a reflection on human nature that such devices must be necessary to control the abuses of government. But what is government itself but the greatest of all reflections on human nature?* If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself. [16]

History can judge, and to a large extent has already judged, which vision of the nature of Man offers a better foundation for a system of government.

Footnotes

a1    Assistant Professor, Northwestern University School of Law.

aa1   Associate Professor, Northwestern University School of Law.

1     THE FEDERALIST No. 10, at 77 (James Madison)(Clinton Rossiter ed., 1961).

2     *Id*.

3     *Id*.

4     *Id*. at 78.

5     *Id*.

6     *Id*.

7     *Id*.

8     *Id*. at 79.

9     *Cf*. 1 ADAM SMITH, THE WEALTH OF NATIONS 26-27 (R.H. Campbell et al. eds., 1976)(1776) ("It is not from the benevolence of the butcher, the brewer, or the baker that we expect our dinner, but from regard to their own interest.").

10    The Madisonian and Marxist visions are not, of course, the only possible conceptions of human nature. Sociobiology, Freudianism, Christianity, and Judaism are just a few of the influential theories that have much to say about the nature of Man.

11    KONST. SSSR pmbl. (1977).

12    *Id*. art. 6.

13    *See id*. ("The Communist Party ... determines the general perspectives of the development of society ..., directs the great constructive work of the Soviet people, and imparts a planned, systematic, and theoretically substantiated character to their struggle for the victory of communism.").

14    THE FEDERALIST No. 10, *supra* note 1, at 80.

15    THE FEDERALIST No. 51, at 320 (James Madison)(Clinton Rossiter ed., 1961).

16    *Id*. at 321-22 (emphasis added).

16 HVJLPP 1

**End of Document**        © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# CERTIFICATE OF SERVICE

When All Case Participants are Registered for the Appellate CM/ECF System:

I am employed in the country of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 4670 Nebo Drive, Suite 200, La Mesa, California 91941.

I, the undersigned, hereby certify that I electronically filed the foregoing with the Clerk of the Court of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 25, 2016:

1.     Appellant's Reply Brief


Dated: January 25, 2016                    Signature:   /s/ Michelle D. Volk

                                                         Michelle D. Volk